Argued May 26, reversed September 21, petition for rehearing
denied October 14, 1971, petition for review denied
January 4, 1972

MAJOR ET AL, *Respondents, v.* DOUGLAS COUNTY
ET AL, *Appellants.*

488 P2d 808

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause and filed the brief for appellants.

*Richard V. Bayless,* Portland, argued the cause for respondents. With him on the brief were Gary E. Rhoades and Bauer, Murphy, Bayless & Fundingsland, Portland.

Before SCHWAB, Chief Judge, and FORT and THORN-TON,* Judges.

SCHWAB, C. J.

In this equity suit the plaintiffs, individual and corporate taxpayers in Douglas County, seek to enjoin the defendants, Douglas County and its Board of Commissioners, from maintaining certain roads at county expense. The trial court granted the relief sought and defendants appeal.

On September 10, 1969, Douglas County and the United States Bureau of Land Management (hereafter Bureau) entered into an agreement whereby the county agreed to perform maintenance functions on

---

* Thornton, J., did not participate in this decision.

approximately 32 miles of roads that pass through Bureau lands and are commonly known as the "Cow Creek" system. The principal road in this system runs generally north and south, with its northern terminus near the city of Riddle and its southern terminus near the city of Glendale. This road would be the only link between Glendale and cities to the north if for some reason the two bridges between Glendale and Interstate 5 became impassable.

The right-of-way for most of this road system was acquired by the United States Government by condemnation in 1957, and the balance acquired through conveyance of an easement by The Robert Dollar Company, one of the plaintiffs, in 1961.[1]

Apparently, construction of the road system was completed shortly after that latter date. Since then, the roads have been used by the public for recreational purposes among others, and to haul cut timber from Bureau lands. The public has been allowed continuous free access to these roads; commercial haulers carrying timber over the roads are required to have permits, pay fees, and meet other requirements imposed by the Bureau. The record does not disclose what percentage of those using the roads have been members of the public generally as distinguished from commercial haulers subject to these special regulations.

Before the agreement here involved was made, the roads in question were owned and maintained by the Bureau. Under the terms of the agreement, the Bureau was to retain ownership, and the county was

---

[1] Although these condemnation proceedings necessarily determined that the taking of the easements was for a public purpose, no issue is presented as to the possible res judicata effect, if any, of those actions.

to assume at its expense the obligation of maintaining the particular roads in question.

■ The legality of the county's agreement to maintain the roads of the "Cow Creek" system turns on an interpretation of two statutes:

> "The county court of each county may cooperate with the state, the United States or any department thereof in the improvement of any public road within the county." ORS 368.805.

> " 'Public road' means any road intended for use of the general public, whether designated and known as a state, county, district or any other kind of road." ORS 368.010(2).②

We conclude that the roads in question are "public" as that term is defined in ORS 368.010(2) and used in ORS 368.805, and therefore the agreement to maintain those roads is valid.

As a preliminary matter, we note that the legislature has defined "public" road in different ways for different purposes. The term is defined very broadly in ORS 767.015(3), dealing with the jurisdiction of the Public Utility Commissioner. Cf. 30 Op Att'y Gen 3 (Or 1960-1962). The term is also broadly defined in ORS 319.010(9), concerning motor vehicle fuel taxes. Cf. 23 Op Att'y Gen 130 (Or 1946-1948), and 23 Op Att'y Gen 495 (Or 1946-1948). By contrast, the term appears to be more narrowly defined as to the applicability of the Motor Vehicle code. ORS 483.010(2) and 483.038; *see, King v. Edward Hines Lumber Co.,* 68 F

---

② Although the definition of public road in ORS 368.010 does not expressly, by the terms of that section, apply to ORS 368.805, it has been pointed out that such is an omission in the codification. 33 Op Att'y Gen 412, 413 (Or 1966-1968).

Supp 1019 (D Or 1946).[9] Therefore, it seems quite possible that a road considered to be public for one purpose might not necessarily be public for other purposes. However, we are now only concerned with the use of that term in ORS 368.010(2) and 368.805.

The above provisions of ORS 368.010(2) and 368.805 were first enacted in 1917. General Laws of Oregon 1917, ch 299, p 613. Since that date no Oregon appellate court has been presented with the question of what constitutes a public road within the meaning of these sections. However, there is authority in earlier cases and in related, but perhaps distinguishable, contexts to guide us in this determination.

■ Both parties rely on *Wolfard v. Fisher,* 48 Or 479, 84 P 850, 87 P 530, 7 LRA (ns) 991 (1906), and *Bridal Veil Lumbering Co. v. Johnson,* 30 Or 205, 46 P 790, 34 LRA 368 (1896). *Wolfard* was a nuisance action to enjoin the operation of a quarter-mile spur railroad used primarily by defendant to ship products to and from his mill. In holding for the defendant the court noted the track

"* * * being available to the public generally for shipping purposes, its use is a public one. The number of shipments made by different individuals or firms over a track is not the criterion by which to judge whether or not it is a public track. The public or private character of a track or way *depends upon the right of the public generally to its use* and not upon the extent of the exercise of that right * * *." (Emphasis supplied.) 48 Or at 482-83.

[9] The language that most strongly supports plaintiffs' position appears in King v. Edward Hines Lumber Co., 68 F Supp 1019 (D Or 1946). However, in determining the applicability of the Motor Vehicle code, that case was concerned with a completely different statutory definition of public roads. Therefore, we do not find the dicta in that opinion persuasive for our present purposes.

*Bridal Veil* was an action by the plaintiff railroad to condemn a right-of-way; the defendant asserted that the right-of-way would be used for plaintiff's logging operations and not for any public use. In rejecting this defense, the Supreme Court observed:

"* * * The question of public use is * * * determined, as a matter of law * * * by the fact that the proposed road is intended as a highway for the use of the public in the transportation of freight and passengers. And it can make no difference that its use may be limited by circumstances to a small part of the community. *Its character is determined by the right of the public to use it, and not by the extent to which that right is exercised* * * *." (Emphasis supplied.) 30 Or at 210.

We adopt the reasoning of those decisions as a touchstone in interpreting the controlling statutes. Thus, we believe that "any road intended for the use of the general public" as used in ORS 368.010(2), means any road that the public has a right to use.

But that does not dispose of the instant case, because the parties are in sharp disagreement over the extent of the right of the public to use the "Cow Creek" system in Douglas County. The record discloses that since the roads were built by the Bureau the general public has enjoyed continuous free use of the roads, with the exception of commercial haulers who must secure a permit from the Bureau, pay certain fees, and comply with other requirements. Use by the general public has included access to at least one developed recreation area, plus access to surrounding Bureau lands for hunting and fishing. Thus, these roads seem completely public as that term was defined in *Wolfard v. Fisher,* supra, and *B. V. L. Co. v. Johnson,* supra.

Over many years the general public has enjoyed the "right" to use the "Cow Creek" system.

Plaintiffs resist this conclusion with two arguments: (1) the Bureau charges commercial haulers various fees for using the roads in question; and (2) Bureau officials believe they have authority to close the roads for "reasonable cause." Plaintiffs would conclude from these factors that the public has no "right" to use the roads of the "Cow Creek" system.[4]

 Plaintiffs' contentions are without merit. Charging fees to use a road does not necessarily make that road non-public. Toll roads are common. Cf. *Oregon v. Portland Gen. Elec. Co.,* 52 Or 502, 95 P 722, 98 P 160 (1908) (charging tolls does not negate the public character of a canal); 30 Op Att'y Gen 3 (Or 1960-1962) (interstate toll bridges are public highways for purposes of computing motor carrier highway use taxes). The special requirements applied to commercial haulers on these roads are not materially different from the rules applied by the PUC to commercial traffic on all the roads of this state. See ORS ch 767. And all roads, whether controlled by the state, county or federal government, can be closed for reasonable cause such as repairs. This does not detract from their public nature. Cf. *White Bros. v. Oregon State Police,* 246 Or 106, 424 P2d 221 (1967) (road that was intermit-

---

[4] Plaintiffs also contend that a requisite of a public road is the public duty to maintain it. But in determining the authority of the county to maintain Bureau roads pursuant to ORS 368.805, this reasons in a circle. Furthermore, the roads are now maintained at public expense by the Bureau; the question is whether a different part of the public can assume this obligation. Finally, we note that in Towns v. Klamath County, 33 Or 225, 53 P 604 (1898), a road was held to be public although maintained at the expense of a private individual.

tently open and closed during reconstruction remained public at all times).

The ultimate problem with plaintiffs' position is that they would define the term "right to use a road" too narrowly, equating it with an irrevocable dedication to the public. There is no indication in the *Wolfard* or *Bridal Veil* decisions that the term was being used that narrowly; on the contrary, the facts of both those cases suggest the public had a right to use the railroad lines involved even though there had been no formal dedication.

Furthermore, the plaintiffs' position would totally emasculate ORS 368.805. That provision contemplates —possibly invites—county cooperation in the maintenance of public roads with "the United States or any department thereof." Yet, since use of many, if not all, roads on federal lands involves some special use fee and the roads can be closed for reasonable cause, plaintiffs ask us to read the quoted phrase out of the statute. This we refuse to do.

The "Cow Creek" system consists of public roads as that term is used in ORS 368.010(2). The agreement between Douglas County and the Bureau is therefore legal.

Reversed.