2006 WY 69

**Terence M. REIDY and Maureen T. (Ripple) Reidy, Appellants (Petitioners),**

v.

**STRATTON SHEEP COMPANY, a Wyoming corporation, Appellee (Respondent).**

No. 05–194.

Supreme Court of Wyoming.

June 2, 2006.

Representing Appellants: Kermit C. Brown of Brown & Hiser, LLC, Laramie, Wyoming.

Representing Appellee: Catherine MacPherson of MacPherson, Kelly & Thompson, LLC, Rawlins, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶1] Stratton Sheep Company's (Stratton) property in Carbon County adjoins a U.S. Forest Service road. Claiming that road was not a public road and was not convenient given its proposed use of the property, Stratton applied to the Carbon County Board of County Commissioners (the board) for a private road across property belonging to Terence and Maureen Reidy (the Reidys) pursuant to Wyo. Stat. Ann. § 24–9–101 (LexisNexis 2001). The board ruled Stratton had shown the private road was necessary and granted its petition, and the district court affirmed. We conclude the board's order is not supported by the record and is inconsistent with Wyoming law. Consequently, we reverse and remand to the district court directing the district court to enter an order reversing the order of the board and directing the board to deny the Stratton Sheep application for a private road.

## ISSUES

[¶2] The Reidys present a comprehensive list of issues on appeal:

1. Whether access is necessary because respondent Stratton Sheep Company has no legally enforceable access.

 A. Whether USFS 807 is a public road such that, under W.S. § 24–9–101(a), respondent Stratton Sheep Company has an outlet to, or connection with a public road.

 B. Whether the southern portion of Tract 49 is "surrounded on all sides by land owned by another person or persons or a natural or man-made barrier making access unreasonably costly."

2. Whether respondent Stratton Sheep Company has satisfied the requirements

of Wyo. Stat. Ann. § 24–9–101 (LEXIS 2001).

3. Whether the road established by the Carbon County Board of Commissioners in its Findings of Fact, Conclusions of Law and Order (Appendix B) was necessitated by the requirement of Wyo. Stat. Ann. § 24–9–101 (LEXIS 2001) that the viewers and appraisers recommend "the most reasonable and convenient route[."]

Stratton rephrases the issues as:

1. Was the action of the Carbon County Board of Commissioners which established a private road for Stratton Sheep Company across lands belonging to Appellants Reidy supported by substantial evidence in the record?

2. Was the action of the Carbon County Board of Commissioners which established a private road for Stratton Sheep Company across lands belonging to Appellants Reidy in accordance with law?

### FACTS

[¶ 3] The Reidys own a dude ranch in Carbon County along the Wyoming–Colorado border. Stratton owns a 160–acre parcel known as Tract 49, adjacent to the Reidys' property. Over the years, Stratton has used Tract 49 to graze its livestock. In approximately 1996, Stratton began constructing corrals in the southern part of Tract 49 with plans to use the facility to transport cattle in and out of Tract 49 by semi-truck and trailer. Prior to that time, Stratton raised sheep and transported them to Tract 49 by pickup and stock trailer.

[¶ 4] Historically, Stratton accessed its property by using two different routes. The route from the north involved traveling Wyoming State Highway 70 to a Forest Service road known as FS 807, which connects directly to the northern boundary of Tract 49 at a point approximately six and one-half to seven miles from Highway 70. The second route is from the south. In order to use that route, one must travel Colorado Routt County Road 129 to a road traversing the Reidys' private property for approximately one and one-quarter miles to the southern boundary of Tract 49. This road passes through the Reidys' dude ranch headquarters. In the past, the Reidys and their predecessors allowed Stratton to travel the road over their private property to access the southern boundary of Tract 49. However, in 1997, the Reidys revoked permission for Stratton to cross its property. They objected to Stratton's proposal to use semi-trucks to transport its cattle through the Reidys' dude ranch.

[¶ 5] Although the record is not entirely clear, apparently the proposed private road in this case will cover only a portion of the one and one-quarter mile long access road across the Reidy property. Stratton obtained a prescriptive easement over another portion of the road and plans to use the private road procedure in Colorado to obtain access over the portion of the road located in that state.

[¶ 6] Pursuant to § 24–9–101, *et. seq.*, the board held a hearing to determine whether Tract 49 was landlocked and a private road over the Reidys' property was necessary. The board concluded Stratton had successfully established the private road was necessary and appointed viewers and appraisers to locate the road and determine the amount of compensation due to the Reidys. After the viewers and appraisers returned their recommendations, the board granted Stratton's private road petition. The Reidys filed a petition for review with the district court, which affirmed the board's decision. The Reidys filed a timely notice of appeal with this Court.

### STANDARD OF REVIEW

[¶ 7] The board's decision on an application for a private road under § 24–9–101 is subject to review under the Wyoming Administrative Procedures Act. In reviewing the board's decision, we stand in the same position as the district court, and our review is governed by the considerations specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005). *Mayland v. Flitner*, 2001 WY 69, ¶ 10, 28 P.3d 838, 843 (Wyo.2001). Section 16–3–114(c) provides, in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions

of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

\* \* \*

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

\* \* \*

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Both parties presented evidence in this case, and, consequently, we review the factual determinations of the board by applying the substantial evidence test. *Mayland,* ¶ 10, 28 P.3d at 843. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Newman v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002), quoting *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001). *See also, Elk Horn Ranch, Inc. v. Bd. of County Comm'rs, Crook County,* 2002 WY 167, 57 P.3d 1218 (Wyo.2002).

■ [¶ 8] The board's conclusions of law are not, however, entitled to the same deference as its factual findings. No deference is given to its conclusions of law. "If the agency has not invoked and properly applied the correct rule of law, we are obligated to correct the error." *Mayland,* ¶ 10, 28 P.3d at 843, quoting *Miller v. Bradley,* 4 P.3d 882, 886 (Wyo.2000).

■ [¶ 9] To review the board's determinations of ultimate fact, we apply the following standard:

When an agency's determinations involve elements of law and fact, or ultimate facts, we do not give them the same deference we reserve for findings of basic fact. *Basin Electric Power Coop., Inc. v. Dep't of Revenue,* 970 P.2d 841, 850 (Wyo.1998). Instead, we separate the factual elements from the legal elements to determine whether the appropriate rule of law has been correctly applied to the facts and defer to the agency's ultimate factual finding only if there is no error in either stating or applying the law. *Id.* at 850–51.

*Amoco Prod. Co. v. State of Wyoming, Dep't of Revenue,* 2004 WY 89, ¶ 6, 94 P.3d 430, ¶ 6 (Wyo.2004).

*Wyoming Dep't of Revenue v. Guthrie,* 2005 WY 79, 115 P.3d 1086 (Wyo.2005).

## DISCUSSION

### A. Public Road

■ [¶ 10] Section 24–9–101, *et. seq.,* sets out the procedure for obtaining a private road and provides the sole remedy for landlocked landowners. *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991). Section 24–9–101 states in relevant part:

(a) Any person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road leading from his land to some convenient public road. The application shall contain the following information:

(i) The legal description of the land owned by the applicant to which access is sought and a statement that the land is located within the county;

(ii) A specific statement as to why the land has no legally enforceable access, other than a waterway, and whether the land is surrounded on all sides by land owned by another person or persons or a natural or man-made barrier making access unreasonably costly;

(iii) A description of the applicant's efforts to purchase a legally enforceable access to a public road;

(iv) A description sufficient to identify the general location of any access routes proposed by the applicant;

(v) The legal description and the names and addresses of the affected parties of all land over which any proposed access routes would cross. Affected parties includes the owners of record and any lessee, mortgagee or occupant of the land over which any proposed road would cross and may include the state of Wyoming; and

(vi) A statement as to whether any actions of the applicant or any person with the consent and knowledge of the applicant, caused the applicant's land to lose or to not have any legally enforceable access.

* * *

(h) If at the completion of the hearing the board finds that the applicant has satisfied the requirements of this section and access is necessary because the applicant has no legally enforceable access, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers.

* * *

[¶ 11] The statutory private road procedure derives its constitutional authority from Article I, § 32 of the Wyoming Constitution which states: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity ... nor in any case without due compensation." Thus, the threshold inquiry for establishment of a private road under § 24–9–101 is necessity.

The private road statute requires the Board to initially conduct a hearing to determine "the necessity of the road" petitioned for by "any person whose land has no outlet to, nor connection with a public road." Wyo. Stat. Ann. § 24–9–101 (Lexis 1999). We said in *McGuire v. McGuire*, 608 P.2d 1278, 1286 (Wyo.1980), and affirmed in *Reaves v. Riley*, 782 P.2d 1136, 1137 (Wyo.1989), that the "no outlet to, nor connection with" language means "no legally enforceable, existing outlet to nor connection with a public road."

*Voss v. Albany County Comm'rs*, 2003 WY 94, ¶ 12, 74 P.3d 714, 719 (Wyo.2003). In *McGuire*, 608 P.2d at 1286, we held once an applicant for a private road has established his land has no legally enforceable means of access to a public road, he has demonstrated "necessity, as a matter of law."

[¶ 12] The board concluded Stratton did not have legally enforceable access to Tract 49 and a private road over the Reidy property was necessary. While the board did not expressly rule on whether or not FS 807 is a public road, its findings and conclusions implied it did not consider FS 807 to be a public road.

[¶ 13] *McGuire* was the first case in which we specifically considered the definition of a "public road" for the purposes of § 24–9–101. In that case, we considered whether a road across lands administered by the United States Bureau of Land Management (BLM) was a "public road" under the private road statute.

The statutory section we examine does not define public road.... State statutes pertaining to state and county roads and which do contain some definitions are not applicable to roads such as the BLM road, the latter being under the jurisdiction of the United States. We cannot adjudicate its status so as to in any fashion bind the United States. We are limited to generally describing it in the light of the statute we have before us.

The statute does not require connection with a public road that is state or county controlled. The evidence discloses that the public has traversed the BLM road for many years and a realty specialist from BLM testified that any United States citizen may travel existing roads or trails on public lands unless specifically closed by BLM and there appear to be no plans to close the road.

* * *

We must, therefore, define a public road in the general sense, keeping in mind what the enacting legislature must have intended at the time of passage of the act, when the State was just coming to life.

The status of BLM roads has been considered by at least one other court. In

*Major v. Douglas County,* 1971, 6 Or.App. 544, 488 P.2d 808, the court there considered the test to be the right of the public to use it. There, like here, the general public had for many years enjoyed the right to use the BLM road; so, therefore, it was a public road within Oregon statutory language, "any public road within the county." That holding is no different conceptually than the general one used in the absence of an applicable statutory definition. A public road is one that the public generally—not merely a portion of the public—is privileged to use. Within the facts reflected by the record, then, we must conclude that the BLM road is a public road within the terms of § 24–9–101, supra.

*McGuire,* 608 P.2d at 1287–88 (footnotes and some citations omitted).

[¶ 14] In *Wagstaff v. Sublette County Bd. of Comm'rs,* 2002 WY 123, 53 P.3d 79 (Wyo. 2002), we reached a different conclusion about the particular BLM road at issue in that case. We said there was no evidence the undeveloped two track road over state and BLM property was a "public road." "[T]he dirt tracks located upon the State and BLM property were not maintained at any time, were solely passable in the summer months at a slow rate of speed, and were only used occasionally by hunters and not the general public." *Wagstaff,* ¶ 15, 53 P.3d at 83. In reaching the conclusion that the BLM road did not meet the statutory definition of a "public road," we distinguished *McGuire* as follows:

We also find that the case of *McGuire* as to its ruling regarding public roads is distinguishable from this case. No evidence was presented to the Board concerning GCC's access via this route other than that mentioned above, whereas in *McGuire,* the evidence disclosed that the public had traversed the BLM road for many years. In addition, a realty specialist from the BLM testified in *McGuire* that any United States citizen may travel existing roads or trails on public land unless specifically closed by the BLM and that the BLM had no present plans to close the road there involved. In this case, no evidence was

presented that the public generally has the privilege to traverse the unimproved dirt tracks on the State and BLM land involved.

*Wagstaff,* ¶ 17, 53 P.3d at 83–84.

[¶ 15] Returning to the case at bar, we note the record contains voluminous testimony and documentary evidence presented at the contested case hearing concerning the characteristics of FS 807. The parties agree FS 807 leads directly from Highway 70 to the northwest corner of Tract 49 and it is approximately six and one-half to seven miles from Highway 70 to the tract boundary. The Forest Service designated FS 807 as a collector road which according to Forest Service employee, Steve Kerpan, is a "pretty major road," which the Forest Service regularly maintains. The northerly portion is designated by the Forest Service as "Level 2" and is accessible by passenger car, while the southerly portion of the road is designated "Level 3" and may be traveled by higher profile vehicles. Some improvements, including barrow or drain ditches and a signed bridge, have been made by the Forest Service to the road.

[¶ 16] Mr. Kerpan testified FS 807 is open to the general public and had been publicly used for more than forty years. The road is used by tourists, hunters, ranchers, farmers, and even motorcyclists. Multiple witnesses for both parties testified they used FS 807 and never asked permission to do so. Mr. Kerpan stated the Forest Service does not plan to close the road and it is highly unlikely it will change public access to the road. Nonetheless, he acknowledged the Forest Service could close the road if it was deemed necessary for proper resource management. Mr. Kerpan also stated the public's interest in using FS 807 is a privilege, rather than a right. Mr. Kerpan explained, however, before FS 807 could be closed the Forest Service would have to comply with the process mandated by the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321, *et. seq.,* which would include a study of alternatives and an opportunity for public comment.

[¶ 17] On the basis of Mr. Kerpan's testimony that the road could be restricted or

closed and use of the road is a privilege rather than a right, Stratton argues the road is not a "public road" within the statute's meaning. We disagree. We hold, as a matter of law, the fact that a road can potentially be restricted or closed is not determinative of the issue of whether it is a public road. The use of any road administered by a public entity is not a guaranteed right and, provided the proper procedures are followed, any road may be closed to the public. *See, e.g.,* Wyo. Stat. Ann. § 15–9–113(a)(xvii) (LexisNexis 2005) (municipalities have the authority to close roads within their jurisdiction); Wyo. Stat. Ann. § 24–1–106(a) (LexisNexis 2005) (department of transportation has power to close or restrict use of state highways); Wyo. Stat. Ann. § 18–3–504 (LexisNexis 2005) (each board of county commissioners has authority to establish, alter and discontinue use of roads within the county). Of course, if a public road is closed, then an owner landlocked by that closure may be able to establish that a private road is "necessary" to provide access. Thus, Mr. Kerpan's statements to the effect that FS 807 could be closed and use of the road is a privilege rather than a right were merely acknowledgements of the Forest Service's power to administer the roads within its jurisdiction and were not determinative of whether or not FS 807 is a public road in the context of our private road statutes.

[¶ 18] In a related argument, Stratton contends Wyoming courts cannot declare whether a Forest Service road is a public road because they have no jurisdiction over federal roads and cannot bind the federal government. Stratton relies on *Yeager v. Forbes,* 2003 WY 134, 78 P.3d 241 (Wyo. 2003), for its contention that Wyoming courts cannot bind the federal government. We have no quarrel with Stratton's contention in that regard. We expressly recognized in

*McGuire* that our determination of whether a road is a "public road" under § 24–9–101 is not binding upon the federal government. However, that does not prevent us from determining whether the road is a public road for the purposes of § 24–9–101. We simply determine the nature of the road in light of our private road statute. *McGuire,* 608 P.2d at 1286–87.

[¶ 19] Through its various agencies, the federal government owns over fifty percent of the land in Wyoming. *Wyoming 2005–Just the Facts!, http://eadiv.state.wy.us* (2005), citing Gov't Services Admin. Office of Governmentwide Real Property Policy. It goes without saying that many private landowners use roads across federal lands to access their private property. If we were to hold a road across federal land could not be considered a public road under our private road statutes, we would be imposing an undue burden upon private landowners in Wyoming to provide access to their neighbors when, in reality, such access was not necessary. We do not believe the legislature intended that result. Therefore, we hold, as a matter of law, a road over federal lands may be considered a public road within the meaning of our private road statutes, provided the characteristics of the road indicate it is available to the general public.

[¶ 20] After a review of the entire record, we find no evidence contradicting the assertion that FS 807 is available for use by the general public. While the board made a finding that the road was "not improved," the record does not support that finding. Testimony and photographs contained in the record clearly show substantial improvements on the road, including barrow or drain ditches and a signed bridge.[1] Like the BLM road in *McGuire,* FS 807 is indisputably open to the general public, routinely used to access

---

1. We are not obligated to defer to the board's factual finding that FS 807 is an "unimproved dirt road" because it is clearly contrary to the great weight of the evidence in the record. As we stated in *Voss,* ¶ 10, 74 P.3d at 719, in conducting a substantial evidence review of the record, we review:

 "the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's deci-

sion.... A court will reach a different conclusion based on the evidence only in those situations where the agency's conclusion is clearly contrary to the weight of the evidence."
*Voss v. Albany County Comm'rs,* 2003 WY 94, ¶ 10, 74 P.3d 714, 719 (Wyo.2003), quoting *McTiernan v. Scott,* 2001 WY 87, ¶ 16, 31 P.3d 749, 756 (Wyo.2001) (citation and footnote omitted).

public and private lands, and is, therefore, obviously distinguishable from the road in *Wagstaff.* Historically, Stratton has actually used the road to access Tract 49.

[¶ 21] Our conclusion that FS 807 is a public road under our private road statute is consistent with *Bd. of County Comm'rs v. Federer Dev. Co.,* 682 P.2d 1062 (Wyo.1984), in which we addressed whether a road administered by the United States Forest Service could be used to provide the requisite access to a proposed subdivision. We approved the district court's rationale that a FS road known as the Blair Road was, in fact, a public road. We quoted the district court's decision letter:

> The Blair Road was originally constructed with the intention of providing permanent use of public access.... [T]he previous owner of the land in question[ ] testified that the Blair Road was originally given by him to the United States Forest Service for easement rhough (sic) his land to Forest Service lands. It seems incongruous then at this point for the County Commissioners to rule that there is no legally enforceable means of access to the property when the Blair Road was originally given by the owners of that same property to the Forest Service to not only gain permanent public access to private lands but to the Forest Service lands as well.

*Id.* at 1064–65.

[¶ 22] The facts in the instant case reveal an important similarity to *Federer.* Stratton owns another parcel of land near Tract 49 which is an in-holding within the Medicine Bow National Forest.[2] Although it is not entirely clear in the record, Stratton's in-holding is apparently north of Tract 49. Prior to the controversy in this case, Stratton actually granted an easement to the United States to allow FS 807 to cross its private in-holding and that easement specifically states it is for the benefit of the public. This fact further confirms our view that FS 807 is a public road.

[¶ 23] Stratton contends FS 807 is not a public road because it could be closed at

some time in the future, and the access provided by the road, therefore, is not "legally enforceable" under the statute. The board's decision letter indicates it followed a similar rationale, stating: "[t]here is no legally enforceable right to use the Forest Road 807 by any member of the public according to the evidence." It appears this reasoning stems from a misreading of our opinion in *Voss* to the effect that the right to use a public road on federal land must be "legally enforceable." In *Voss,* we concluded a personal thirty year right-of-way grant/temporary use permit over BLM land was not "legally enforceable access" to the public road in question—a county road. *Voss,* ¶ 13, 74 P.3d at 719. By its terms, the grant terminated after thirty years and, although it was renewable at that time, renewal was not guaranteed. Furthermore, the permit was personal and did not "pass automatically upon conveyance of the property." *Id.* Instead, the grant was assignable only upon approval by the BLM. *Id.* Because it was obviously a personal right-of-way, we did not directly address the issue of whether the access road over BLM property in *Voss* was a public road.

[¶ 24] The "legally enforceable" inquiry is relevant only in determining whether a person has such a connection with, or outlet to, a public road. *See, e.g., McGuire,* 608 P.2d at 1286; *Reaves v. Riley,* 782 P.2d 1136 (Wyo. 1989). However, if a landowner has direct access to a "public road" under our statute, the question of legal enforceability is irrelevant and a private road is not necessary. Although we did not directly address this principle in *Voss,* we did recognize the underlying goal of the private road statute is to provide access to the public road system. *Voss,* ¶ 32, 74 P.3d at 723–24. *See also, Miller v. Bradley,* 4 P.3d 882, 889 (Wyo. 2000); *Dunning v. Ankney,* 936 P.2d 61, 64 (Wyo.1997). Because the record in this case demonstrates FS 807 is open to, and used by, the general public, it is distinguishable from *Voss.* No right of way is required to use FS 807 and, since it is open to the general public,

2. The parties agree an "in-holding" is a parcel of private land which is completely surrounded by lands owned by the government.

there is no question about transferability of the right to use the road.

[¶ 25] In determining FS 807 could not be considered a public road under our case law, the board misinterpreted our precedent. This Court has never held a road on federal property cannot be a public road under the private road statute. In fact, we held just the opposite in *McGuire*, which has never been overruled. To be completely clear, we hold, as a matter of law, roads over federal lands may be considered public roads under our private road statutes. Of course, the individual characteristics of each road will determine its status. In this case, when the correct rule of law is applied to the essentially undisputed facts, it is clear FS 807 is a public road. We conclude the board erred when it failed to recognize FS 807 as a public road and ruled that Stratton had proven necessity because its access via FS 807 was not "legally enforceable."

### B. Convenience

 [¶ 26] Even if FS 807 qualifies as a public road, Stratton maintains it is not convenient for it to use that road and, under our case law, it is still entitled to a private road across the Reidys' property. The Reidys argue the issue of convenience is not relevant so long as FS 807 is a public road which provides Stratton access to its property. As we noted above, § 24–9–101(a) states: "Any person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road leading from his land to some convenient public road." Because the adjective "convenient" is not used to modify the term "public road" in the first part of the sentence, one could argue the convenience of a road is not a pertinent inquiry until the applicant has established he is landlocked and the board of county commissioners is considering the alternative routes for establishing a private road.

[¶ 27] However, we have often recognized the legislature intended the private road statute to create a practical and efficient method for providing landlocked landowners usable access. Our jurisprudence on this issue indicates convenience should be a consideration in determining the necessity of a private road. In *McGuire*, we stated:

> We agree with the district judge that the county commissioners' finding that the road was not "necessary" was unsupported by the evidence. The evidence clearly demands the opposite conclusion. We hold that any person whose land is so situated that it has no outlet or legally enforceable means by which he can gain access has demonstrated necessity, as a matter of law, without there being a further need to show that he lives on that land or that it is being, or will be, used for some specific purpose nor was it proper to inquire into impact on adjoining owners (other than the owners whose land will be taken), financial interest of applicants, use for hunting, fences and improvements, or whether permissive access had been denied. **In our view, the word "necessary" in the statute refers only to the lack of the type of outlet we have described to a "convenient" public road.**

*608 P.2d at 1286 (emphasis added). See also, Gold v. Bd. of County Comm'rs of Teton County,* 658 P.2d 690, 694 (Wyo.1983).

[¶ 28] Consideration of convenience is demonstrated most clearly in *Wagstaff*. The facts in *Wagstaff* were somewhat complicated, but they were key to our decision and bear repeating here:

> Grindstone Cattle Company ("GCC") owns a piece of real property which is commonly known as "Scott's Place" and another parcel of real estate which is north and west of Scott's Place and is separated from Scott's Place by a strip of land owned by the State of Wyoming and the Bureau of Land Management ("BLM"). Wagstaffs own real property that adjoins Scott's Place to the south. A title search established there are no easements or rights of way of record evidencing any legally enforceable access to Scott's Place. While State Route 354 runs through Wagstaffs' property, it does not run through Scott's Place. For over fifty years, GCC and its predecessors have had permissive use of a mile long roadway traversing

Wagstaffs' land to access their property from State Route 354.

*Wagstaff,* ¶ 3, 53 P.3d at 80.

The Board received evidence of other possible routes to the Scott's Place property. County Road 150, the "Pape Road," to the east of Scott's place, was deemed not to be a viable option because the Green River lies between Scott's Place and the Pape Road, and there is no existing access without bridging across the river. The only other possible means of access would be from the west and north, which would require traveling an extra 35 miles on State Route 354, County Road 112, and County Road 115, and then traversing an additional 15 miles over dirt tracks across state and BLM property.

*Id.,* ¶ 8, 53 P.3d at 81. On appeal, Wagstaff claimed the circuitous route through GCC's other piece of property provided the statutory outlet to or connection with a public road. *Id.* In response to Wagstaff's argument, we stated:

Moreover, even if we were to hold that the unimproved dirt tracks on the State and BLM land constituted public roads, such a determination is not definitive in the analysis that must be made. As stated previously, the legislature in its enactment of § 24–9–101 intended that the term "outlet" be such that it affords the landowner access via a convenient public road and that convenience and reason prevail in the establishment of roads. While Wagstaffs argue that GCC should be required to use the route over the State and BLM unimproved dirt tracks because GCC could file a petition to require the needed maintenance on County Road 115 and the unimproved dirt tracks across the State and BLM property and spend additional monies to improve the State and BLM unimproved dirt tracks so they would be generally passable on a year round basis, requiring GCC to take such acts simply does not fall within the legislature's expressed intention.

*Id.,* ¶ 18, 53 P.3d at 84. Affirming the board, this Court agreed GCC should not be required to travel an extended route amounting to an additional fifty miles over roadways

which were impassable for part of the year in lieu of establishing a mile long private road over Wagstaff's land. *Id.,* ¶¶ 3, 8, 20, 53 P.3d at 80–81, 84.

[¶ 29] Although the legislature has amended other aspects of the statute, it has not done so to change our interpretation that convenience of the public road is a factor to be considered. If this Court had incorrectly interpreted the legislature's intent, "legislative action to clarify the statutes and correct the court's decision would seem a likely result." *Albertson's, Inc. v. City of Sheridan,* 2001 WY 98 ¶ 21, 33 P.3d 161 (Wyo.2001).

[¶ 30] The convenience factor must, however, be applied judiciously. Wyo. Const. Art. I, § 32 mandates that in order to constitutionally justify a private condemnation of property, there must be necessity. Consequently, the inconvenience which would justify a private taking must be substantial. In fact, it must be so substantial it is functionally equivalent to necessity. Our case law bears this out. We have never approved a private road simply on the basis that it would be more convenient to the applicant than another already existing means of access. Rather, only when the record contains evidence showing the alternative access is obviously impractical and unreasonable has this Court approved the creation of a private road under the statutes.

[¶ 31] Interpreting the statute to allow a finding of necessity when an applicant is seriously inconvenienced by an alternative route serves the purposes of the private road statute. The statutory private road procedure replaced the common law way of necessity as the means for a landlocked property owner to gain access to his property. *Ferguson,* 811 P.2d at 290. The legislature enacted the private road statutes to ensure a landowner can use his property for "productive purposes" while providing compensation to the burdened landowners. *Id.* at 289, citing 2 Thompson on Real Property §§ 362–368 (1980 Repl). Stated another way, a private road granted pursuant to § 24–9–101, *et. seq.,* allows the use and enjoyment of specific property by providing access. *Reaves,* 782 P.2d at 1137. Thus, there

is a "public good" consideration in granting a private road. We explained in *Hulse v. First Am. Title Co.*, 2001 WY 95, ¶¶ 30, 33, 33 P.3d 122, 132–33 (Wyo.2001) (some citations omitted):

> [T]here is a public interest in giving access by individuals to the road and highway network of the state as a part and an extension thereof for economic reasons and the development of land as a resource for the common good, whether residential or otherwise.
>
> \* \* \*
>
> Moreover, this court has held the right to condemn a way of necessity under constitutional and statutory provisions is an expression of public policy against landlocking property and rendering it useless. As a consequence, the statute provides that any grant of a private road under its provisions requires a finding by the board that the property owner seeking its creation has no legally enforceable access to a public road and that the private road is "necessary" before it may enter its order declaring the creation of the private road.

Wyo. Stat. Ann. §§ 24–9–101, –103.

[¶ 32] If the purposes of the statute are to be served, we must take into account instances of substantial inconvenience. We have recognized this concept in choosing between alternative routes when we have refused to require a landlocked property owner to choose a "wholly illogical, uneconomic, and unproductive road." *Ferguson*, 811 P.2d at 290. *See also, Martens v. Johnson County Bd. of Comm'rs*, 954 P.2d 375, 380 (Wyo. 1998). Furthermore, we have refused to require private road applicants to overcome all obstacles before petitioning for a private road, *Walton v. Dana*, 609 P.2d 461, 463 (Wyo.1980), or to consider routes in other counties, *Lindt v. Murray*, 895 P.2d 459, 463 (Wyo.1995). These cases indicate that the statute must be interpreted practically and support our holding that a showing of substantial inconvenience may satisfy the necessity requirement of the private road statute. *See also, Peery v. Hill*, 275 Ky. 105, 120 S.W.2d 762, 764 (1938) (holding under the Kentucky private road statute, an applicant had proven necessity when he showed prac-

tical necessity): *See* M. DiSabatino, *Way of Necessity Over Another's Land, Where a Means of Access Does Exist, But is Claimed to be Inadequate, Inconvenient, Difficult, or Costly*, 10 A.L.R.4th 447 (1981), and cases cited therein.

[¶ 33] Stratton outlines a number of obstacles which it claims make FS 807 inconvenient and entitles it to a private road across the Reidys' property. First, Stratton argues the private road is more convenient because FS 807 is not plowed in the winter. However, the proposed private road, likewise, is not plowed during the winter, and Charles Juare, a shareholder and the president of Stratton, testified his ranching operation only used Tract 49 in the summer and fall. Since access in the winter is not important to Stratton, the lack of winter accessibility was not evidence of substantial inconvenience.

[¶ 34] Next, Stratton argues the private road route is more convenient because the FS 807 route is significantly longer. The board agreed: "It is the opinion of the Commissioners that a road of 1¼ miles … is considerably more convenient than 6 ½ miles over unimproved dirt road that will not meet the requirements of the applicant with the anticipated use of large trucks." However, this finding was tainted by the board's incorrect legal conclusion that FS 807 is not a public road. When the Colorado Routt County Road access is compared with FS 807, the latter is obviously more convenient because it connects directly to Tract 49, while the proposed private road access is one and one-quarter miles from a public road. The primary difference between the routes is that using FS 807 requires one to travel approximately five miles further on a dirt road. That fact alone does not establish sufficiently substantial inconvenience to constitute functional necessity. Another means of comparing the convenience of the two routes is the total distance of each. We employed this method in *Wagstaff*. Stratton confirmed there was no appreciable difference between the two routes in terms of total distance from other parts of its ranch to Tract 49.

[¶ 35] Further, Stratton contends FS 807 is inconvenient because it is not conducive to hauling cattle by semi-truck. Mr. Juare testified FS 807 is narrow and includes sharp curves, making it unsuitable for travel by a loaded semi-truck and trailer. He also testified that, in order to transverse FS 807 to Tract 49, one must cross a bridge and the weight restrictions on the bridge would prevent a loaded semi-truck from crossing. Stratton has, however, used the Forest Service road in the past to haul cattle to Tract 49 using a pickup and stock trailer, although Mr. Juare indicated it is less convenient to haul smaller loads of cattle and their equipment suffers wear and tear because the trailer drags on parts of FS 807.

[¶ 36] The record establishes the proposed private road is also steep, and the parties contested whether it was suitable to travel with a semi-truck and trailer loaded with cattle.[3] Despite a difference of opinion concerning the suitability of the proposed private road for semi-truck traffic, no dispute existed that, although it may not be as convenient to haul smaller loads of cattle, Stratton can use a pickup and trailer to haul its cattle to Tract 49 via FS 807. The cattle could also be trailed along FS 807 to Tract 49. Simply because one landowner would prefer to use his or her property in a certain manner and a different access would facilitate that preference does not mean a private road is necessary. Stratton did not establish it was substantially inconvenienced, consistent with the legal standard outlined above, by being required to use the Forest Service road instead of the proposed private road.

[¶ 37] Finally, Stratton argues it is entitled to a private road over the Reidys' property because travel from the northern

part of Tract 49 to its corrals in the southern part of the tract would be unduly burdensome. Stratton argued it would be unreasonably difficult to construct a road, passable by semi-truck, from FS 807 to the corrals because it would have to cross an irrigation ditch and a small creek located at the bottom of a ravine. The board's decision letter did not directly address this particular argument.

[¶ 38] Natural and man-made barriers are factors considered in determining whether a property is landlocked pursuant to § 24-9-101(a)(ii). However, we have never considered whether a private road may be established to remedy access difficulties related to barriers *within* the applicant's land,[4] and the parties do not provide a statutory analysis regarding the applicability of subsection (a)(ii) to this issue. We do not, however, need to decide whether § 24-9-101 addresses this situation because Stratton does not direct us to specific evidence about the costs or unusual efforts which would be required to construct a road through Tract 49. Furthermore, Mr. Juare admitted his corrals could be constructed in the northern part of Tract 49 which would alleviate the need to travel by vehicle from the northern to the southern part of Tract 49. Thus, there was no factual basis for a finding that the proposed private road is more convenient than FS 807 because of the barriers within Tract 49.

[¶ 39] *Wagstaff* illustrates the high level of inconvenience which must be shown to justify a taking of a neighbor's land for a private road. Any lesser standard would violate the constitutional prohibition against taking of private property for "private use unless by consent of the owner, except for

3. Mr. Reidy testified he used the road to haul hay by semi-truck one year, but his efforts were not fully successful as three loads had tipped, dumping some of the hay. Since that experience, truck drivers have refused to drive a loaded semi-truck down the road. Mr. Reidy explained that a load of live cattle is even more dangerous to haul than a stationary load because the load can shift when the cattle move. Stratton disputed the Reidys' claim it is too dangerous to drive a semi-truck loaded with cattle over the proposed private road. Mr. Juare testified he had hauled pipe and hay over the road by semi-truck. He did not, however, testify as to the weight of his

loads of pipe and hay or explain how those loads would compare to a load of cattle. Mr. Juare did acknowledge a cattle truck is longer than the truck he used to haul the pipe to Tract 49.

4. This issue has been addressed by other states. *See, e.g., Ex parte Lula Dell Cater*, 772 So.2d 1117 (Ala.2000); Annotation, *Way of Necessity Over Another's Land, Where a Means of Access Does Exist, But is Claimed to be Inadequate, Inconvenient, Difficult, or Costly*, 10 A.L.R.4th 447 (1981), and cases cited therein.

private ways of necessity." Wyo. Const. Art. 1, § 32. Determining the ultimate fact of whether a sufficient level of inconvenience has been shown to establish necessity involves elements of law and fact and, is therefore reviewed as a question of law. *Guthrie*, ¶ 13, 115 P.3d at 1090–92. Even giving the board's findings of basic fact the deference they deserve, we conclude the record in the instant case does not demonstrate, as a matter of law, the high level of inconvenience required to establish necessity. The board's conclusion to the contrary was legally incorrect. Because we hold Stratton has not satisfied the threshold showing a private road is necessary, we do not need to address the remaining issues and arguments presented by the Reidys.

[¶ 40] Reversed and remanded to the district court directing the district court to enter an order reversing the order of the board and directing the board to deny the Stratton Sheep application for a private road.