# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 79

APRIL TERM, A.D. 2013

June 28, 2013

IN THE MATTER OF THE
APPLICATION FOR
ESTABLISHMENT OF PRIVATE
ROAD BY EVAN W. CROSS AND
SANDRA D. CROSS, husband and wife,
Proposed Road No. 276:

WAYNE CURTIS ALTAFFER,

Appellant
(Respondent),

v.

EVAN W. CROSS and SANDRA D.
CROSS,

Appellees
(Petitioners).

S-12-0221

### *Appeal from the District Court of Crook County*
The Honorable John R. Perry, Judge

*Representing Appellant:*
Kermit C. Brown and Elisa M. Butler of Brown & Hiser LLC, Laramie, Wyoming. Argument by Ms. Butler.

*Representing Appellees:*
Keith R. Nachbar of Keith R. Nachbar, P.C., Casper, Wyoming.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1] Evan W. Cross and Sandra D. Cross filed an application for a private road with the Crook County Board of County Commissioners (Board). Wayne Curtis Altaffer moved to dismiss the application. After a hearing, the Board granted his motion and dismissed the application. The Crosses filed a petition for judicial review in district court. The district court found that the Board's decision was not in accordance with the law, reversed the ruling and remanded the case to the Board. Mr. Altaffer appealed the district court's order to this Court. We will affirm the district court's decision.

## ISSUES

[¶2] Mr. Altaffer contends the district court erred in reversing the Board's ruling dismissing the private road application. The Crosses assert the Board erred in dismissing the application.

## FACTS

[¶3] The Crosses own land located in Crook County, Wyoming. It is surrounded on all four sides by property owned and managed by the United States Department of Interior, Bureau of Reclamation. Mr. Altaffer owns land located directly northwest of the Cross property. The southeast corner of his property touches the northwest corner of the Cross property.

[¶4] The Cross property has no connection or legal access to a public road. The Crosses were aware when they purchased the land that it had no connection to a public road but believed they could purchase an easement for a road from neighboring landowners that would give them access to their land from U.S. Highway 14. Apparently, they were unable to reach an agreement with neighboring landowners and, in January 2011, the Crosses filed an application for private road with the Board. Among others, they listed Mr. Altaffer and the Bureau of Reclamation as parties who would be affected by the private road. Mr. Altaffer moved to dismiss the Cross application on the ground that the road they sought to establish would necessarily cross federal land and the doctrine of sovereign immunity prevented the Board from exercising jurisdiction over the Bureau of Reclamation.

[¶5] Before the Board considered the application and motion to dismiss, the Crosses also contacted the Bureau of Reclamation in an effort to obtain a special use permit giving them access from the northwest corner of their property across Mr. Altaffer's property to the highway. The Bureau of Reclamation declined to consider the request, concluding it was premature. The Bureau of Reclamation advised the Crosses that it would consider

1

the application at such time as they could show they had legal access to Reclamation lands.

[¶6] In May 2011, the Board convened a hearing on Mr. Altaffer's motion. Following the hearing, the Board dismissed the application finding that it had no jurisdiction over the Bureau of Reclamation and could not, therefore, condemn Reclamation property to provide access to the Crosses. The Board further found there was no legal authority allowing it to grant a private road that did not actually connect with the landlocked property and any access permit granted by the federal government would not be an incorporeal right appurtenant to the Cross property as required by Wyoming law.

[¶7] The Crosses filed a petition for judicial review in district court.[1] The district court reversed the Board's decision, finding that the dismissal of the Crosses' application would render their property useless contrary to public policy. Mr. Altaffer appealed the decision to this Court.

## STANDARD OF REVIEW

[¶8] The following standards govern our review:

> The board's decision on an application for a private road under § 24-9-101 is subject to review under the Wyoming Administrative Procedures Act. In reviewing the board's decision, we stand in the same position as the district court, and our review is governed by the considerations specified in Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2005). *Mayland v. Flitner*, 2001 WY 69, ¶ 10, 28 P.3d 838, 843 (Wyo.2001). Section 16-3-114(c) provides, in pertinent part:
>
> > (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

---

[1] Before the district court could consider the petition, the Bureau of Reclamation filed a notice of removal of the case to federal court citing 28 U.S.C. § 1442. The federal district court summarily remanded the case to state district court after determining that it did not have subject matter jurisdiction.

> * * *
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> * * *
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 7, 135 P.3d 598, 602-603 (Wyo. 2006). Here, the Board dismissed the Cross application on legal grounds. We give no deference to a board's conclusions of law. "If the agency has not invoked and properly applied the correct rule of law, we are obligated to correct the error." *Id.*, citing *Mayland*, ¶ 10, 28 P.3d at 843.

## DISCUSSION

[¶9] Wyo. Stat. Ann. § 24-9-101 (LexisNexis 2011) provides in pertinent part that "[a]ny person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road leading from his land to some convenient public road." Section 24-9-101 derives its constitutional authority from article I, § 32 of the Wyoming Constitution which states in pertinent part: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity . . . ." Thus, the threshold inquiry for establishment of a private road under § 24-9-101 is necessity. *Reidy,* ¶ 11, 135 P.3d at 604. Once an applicant for a private road establishes that his land has no legally enforceable means of access to a public road, he has demonstrated necessity as a matter of law. *Id.*, citing *McGuire v. McGuire*, 608 P.2d 1278, 1286 (Wyo. 1980).

[¶10] There is no dispute that the Crosses have no access to a public road; therefore, as a matter of law, a private road is necessary. The issue in the present case is whether the Board properly dismissed the application because the private road the Crosses sought to establish did not connect directly with their property. Instead the private road traversed the Altaffer property to its southeastern boundary and then would require the Crosses to obtain a special permit from the Bureau of Reclamation to cross federal land to reach their property. The Board resolved the issue summarily on three grounds: 1) it did not have jurisdiction to grant a private road across federal lands; 2) there is no legal authority allowing it to grant a private road that did not actually connect with the landlocked property; and 3) any access permit granted by the federal government would not be an incorporeal right appurtenant to the Cross property as required by Wyoming law. We address each of these grounds separately, beginning with the jurisdictional question.

[¶11]  It is well established that Wyoming courts have no jurisdiction over federal lands and cannot bind the federal government.  *See United States v. Shaw,* 309 U.S. 495, 500-01, 60 S. Ct. 659, 661, 85 L. Ed. 888 (1940) (absent specific statutory consent, no suit may be brought against the United States) and *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 930 (10th Cir. 1975) (Congress has not given its consent to suits against the United States by private individuals seeking private roads).  *See also*, *Reidy*, ¶ 18, 135 P.3d at 606, citing *McGuire* and *Yeager v. Forbes*, 2003 WY 134, 78 P.3d 241 (Wyo. 2003).  However, the fact that a Wyoming court ruling does not bind the federal government does not foreclose our courts from resolving issues under § 24-9-101 where federal lands are involved.  *Reidy*, ¶ 18, 135 P.3d at 606.  In *Reidy*, while recognizing that our determination was not binding upon the federal government, we concluded a Forest Service road was a public road for purposes of our private road statute.  We stated:

> Through its various agencies, the federal government owns over fifty percent of the land in Wyoming.  *Wyoming 2005-Just the Facts!, http://eadiv.state.wy.us* (2005*),* citing Gov't Services Admin.  Office of Governmentwide Real Property Policy.  It goes without saying that many private landowners use roads across federal lands to access their private property.  If we were to hold a road across federal land could not be considered a public road under our private road statutes, we would be imposing an undue burden upon private landowners in Wyoming to provide access to their neighbors when, in reality, such access was not necessary.  We do not believe the legislature intended that result.  Therefore, we hold, as a matter of law, a road over federal lands may be considered a public road within the meaning of our private road statutes, provided the characteristics of the road indicate it is available to the general public.

*Id.*, ¶ 19, 135 P.3d at 606.  *See also McGuire*, 608 P.2d at 1288, where we concluded a Bureau of Land Management (BLM) road satisfied the terms of § 24-9-101.  Given our precedent, the Board erred as a matter of law in concluding that it lacked jurisdiction to decide the Cross application because it involved federal land.

[¶12]  The Board also concluded there is no legal authority allowing it to grant a private road that did not actually connect with the landlocked property.  In *J&T Properties, LLC v. Gallagher*, 2011 WY 112, ¶ 9, 256 P.3d 522, 524 (Wyo. 2011), we considered whether § 24-9-101 requires a private road to connect the landlocked property *directly* to a public road.  Giving the statutory language its plain meaning, we concluded that rather than requiring the private road to cover the entire distance from the applicant's land to the public road, the private road must "serve to bring a person to" a public road.  *Id.*, ¶ 13,

4

256 P.3d at 525. Thus, in *J&T Properties*, we held the district court correctly concluded the applicant was entitled to a private road that connected with a series of private easements to reach a public road. *Id*., ¶ 15, 256 P.3d at 525-26.

[¶13] In reaching the result we did in *J&T Properties*, we reiterated principles often stated in our private road cases. "[C]onvenience and reason should prevail in the establishment of roads." *Id*., citing *Lindt v. Murray*, 895 P.2d 459, 462 (Wyo. 1995). The private road statutes are intended to provide "a readily available, economically affordable, and time efficient method to obtain a means of access to property." *J&T Properties*, ¶ 15, 256 P.3d at 525, quoting *Martens v. Johnson County Board of Comm'rs*, 954 P.2d 375, 380 (Wyo. 1998). We said, "[b]y interpreting the private road statutes to allow an applicant to use other means of legal access together with a private road to cure his access problem, we fulfill the policies of reason, convenience and economic affordability." *J&T Properties*, ¶ 15, 256 P.3d at 525. Given our precedent, the Board incorrectly concluded it could not grant a private road that did not connect directly to the landlocked parcel.

[¶14] The Board also concluded the Crosses' application must be denied as a matter of law because their connection to a public road was dependent upon issuance of a special permit by the Bureau of Reclamation and such a permit would not constitute an incorporeal right appurtenant to the Cross property as required by Wyoming law. In reversing the Board's ruling, the district court was persuaded that reason must prevail and when there is no way to obtain access to landlocked property that would constitute an incorporeal right appurtenant to the property, § 24-9-101 must be interpreted to allow an applicant to use other means along with a private road to gain access. We agree with the district court and limit the requirement that access be an incorporeal right appurtenant to the property to those cases where other options exist for obtaining access.

[¶15] The concept of access as an incorporeal right appurtenant to an estate was first recognized in Wyoming in *McIlquham v. Anthony Wilkinson Live Stock Co.*, 18 Wyo. 53, 104 P. 20 (1909). There a landowner brought an action for a way of necessity over a neighbor's property, claiming that his use of the neighbor's land to get his cattle to water and to access several county roads had been impeded when the neighbor fenced his land. The Court affirmed the district court's dismissal of the petition because it did not allege that the petitioner had no access to or from his land by way of a public road. The Court stated:

> The allegation that he cannot reach either of the county roads mentioned in the petition without going through the defendant's fences is not equivalent to an allegation that he has no other means of access to a public highway from his lands. For aught that appears in the amended petition, he may have a better, shorter, and more convenient way from his

5

lands to a public highway than to either of the county roads mentioned in the petition.

*Id*. at 21-22.

[¶16]  The Court cited the well settled rule that "where a party has one way by which he can reach a public highway and which affords him reasonable facilities for possessing, using and enjoying his own premises, he is not entitled to another way as a way of necessity." *Id.* at 22.  The Court described the right to a way of necessity as "an incorporeal right appurtenant to the estate granted, and not a personal right or one incident to personal property."  Because the facts alleged in the petition did not establish that the landowner had no other means of accessing his property by way of a public road, the Court concluded he had not shown he was entitled to a way of necessity.  The Crosses' situation is distinguishable from *McIlquham* in that it is undisputed that they have no means of accessing their property other than by way of the Bureau of Reclamation and Altaffer properties.

[¶17]  In *Reaves v. Riley*, 782 P.2d 1136 (Wyo. 1989), the Court revisited the concept of "an incorporeal right appurtenant" to an estate again under facts distinguishable from those in the present case.  Mr. Reaves purchased his property with an existing road connecting it to a county road.  After the purchase, he learned that a portion of the connecting road crossed the Riley property and was private.  *Id.* at 1137.  He was unable to obtain an easement from the Rileys to use the road and so he entered into a month-to-month lease with another neighbor who had an easement across the Riley property.  *Id.*  The lease gave him the right to cross the Riley property and reach his own property.  *Id.*  In an attempt to assure permanent access to his property, however, Reaves filed an application for a private road along the existing road.  The Board denied the petition on the ground that a private road was not necessary because he had access to his property by way of the lease.

[¶18]  On appeal, the Court reversed the board's ruling, holding that the lease did not constitute an "outlet to" or "connection with" a convenient public road within the meaning of § 24-9-101; therefore, Reaves was entitled to apply for a private road.   In reaching that result, the Court reasoned that a month-to-month lease across someone else's property was not the sort of access that should prevent a landowner from applying for a private road.  As in *McIlquham,* the concept of an incorporeal right appurtenant to the estate was considered in *Reaves* in the context of property that was not landlocked.  Also in *Reaves*, the concept was used to explain why a landowner who had existing access to his property should still be allowed to pursue a private road under § 24-9-101; it was not used to prevent a landlocked landowner from pursuing a private road.

[¶19]  More recently in *Voss v. Albany County Comm'rs*, 2003 WY 94, 74 P.3d 714 (Wyo. 2003) the Court again addressed the concept of an appurtenant right in the context

of an application for a private road where there were alternative access roads. The Vosses and their predecessors usually accessed their property from an interstate highway exit, across land owned by the Goodmans, then across land owned by the Stevens and finally across BLM land (the BLM road). *Voss*, ¶ 3, 74 P.3d at 717. Alternatively, the Vosses accessed their property by way of another public road and then across the Stevens' property (the creek road). *Id.*

[¶20] In an effort to secure access to their property, the Vosses attempted to obtain easements from their neighbors—the Stevens gave them a restricted easement across their portion of the BLM road which allowed the Vosses to use the road but provided the easement would lapse if the Vosses ever sold less than their entire parcel of land; the BLM issued a thirty year renewable right of way permit to allow the Vosses to use its portion of the road; the Goodmans gave the Vosses an unrestricted easement over their portion of the road. *Id.*, ¶ 4, 74 P.3d at 717. The Vosses' efforts to secure an unrestricted easement from the Stevens over their portion of the BLM road and a separate easement over the creek road were unsuccessful. *Id.*, ¶ 5, 74 P.3d at 717. Ultimately, the Stevens denied the Vosses access over their portion of the creek road and the Vosses filed an application claiming their property was landlocked and seeking to establish the creek road as a private road over the Stevens' property. *Id.*

[¶21] After hearings, the appointment of viewers to visit the property and receipt of the viewers' recommendation, the Board entered an order rejecting the creek road and establishing the BLM road as a private road.[2] *Id.*, ¶ 8, 74 P.3d at 718. The parties sought review of the order in district court, which issued an order remanding the matter to the Board on the ground that the BLM right of way did not provide the Vosses legally enforceable permanent access.[3] *Id.* Both parties appealed and the Vosses claimed the road the Board established did not provide them the type of access guaranteed by § 24-9-101 because it crossed the BLM land pursuant to a mere license and the Stevens' land pursuant to a restricted easement. *Id.*, ¶ 11, 74 P.3 at 719. This Court agreed holding that neither the BLM right of way nor the restricted easement was an appurtenant right and did not, therefore, provide the Vosses with an outlet or connection to a public road within the meaning of § 24-9-101. *Id.*, ¶ 13, 74 P.3d at 719.

[¶22] Like the other cases in which this Court has addressed the concept of an appurtenant right in the context of the private road statutes, *Voss* is distinguishable from the present case. There, the petitioner asked the Board to establish the private road on an existing road that was part public and part private—the creek road. Instead, the Board established the private road on an existing road access to which was dependent in part

---

[2] The road established was actually modified slightly from the existing road to avoid crossing land owned by persons not a party to the proceedings. The modification is not relevant to the issue we address here.

[3] The district court also instructed the Board on remand to determine whether the Vosses filed their application in good faith. That portion of *Voss* is not pertinent to the issue here.

upon a BLM right of way. The Vosses objected to the Board's order because it was not the road they wanted, did not provide the degree of permanency they desired given the thirty year renewable federal right of way, and there was an existing alternative road available which they preferred. In that context, this Court held the Board could not require the applicant to accept as a private road under § 24-9-101 a route dependent upon a right of way that was not an appurtenant right and did not provide the Vosses with the sort of outlet or connection to a public road contemplated in § 24-9-101.

[¶23] *Voss* did not involve an application for a private road where the only route available to connect to a public road necessarily required crossing federal land. *Voss* likewise did not involve an applicant whose only recourse for obtaining access to his land was to request a private road, a portion of which crossed federal land. This Court did not hold in *Voss*, nor has it ever held, that where there is no alternative route available, an applicant is prohibited from having his application considered because the private road he seeks is dependent in part on a right that is not appurtenant to his property. We decline to do so now.

[¶24] Where a landowner's only outlet or connection to a public road is dependent in part on a grant of access that does not constitute an appurtenant right and the landowner seeks a private road which necessarily depends on a non-appurtenant right, he is entitled to have his application considered. While a Board cannot force an applicant to rely on a non-appurtenant right for access to a public road when an alternative route is available, a landowner is not prohibited from relying on such a right for access when an alternative route is not available. To hold otherwise would be contrary to long established public policy against land-locking property and rendering it useless. *Reidy*, ¶ 31, 135 P.3d at 610, quoting *Hulse v. First Am. Title Co.*, 2001 WY 95, ¶ 33, 33 P.3d 122, 132-33 (Wyo. 2001). We reiterate, "reason should prevail in the establishment of private roads" and the private road statutes were intended to provide "a readily available, economically affordable and time efficient method to obtain a means of access to property." *Reidy*, ¶ 15, 135 P.3d at 525. To preclude the Crosses from obtaining access to their land-locked property because they must necessarily cross Bureau of Reclamation land to reach a public road would be contrary to these principles.

[¶25] Mr. Altaffer also argues the Board properly dismissed the Cross application because if it had granted it and then the Bureau of Reclamation declined to grant them a special use permit, there would be a road to nowhere across his property. Section 24-9-101(h) provides in pertinent part: "The viewers and appraisers may recommend specific conditions that the board place on the road as the board deems necessary . . . ." Section 24-9-103(a) also authorizes the board to impose conditions on private roads. In the present case, it would seem appropriate for the Board upon entering any order granting the Cross petition for a private road to condition its use upon the grant of a special use permit by the Bureau of Reclamation.

8

[¶26]  We reverse the Board's order and remand to the district court for remand to the Board for entry of an order consistent with this decision.