2003 WY 94

Mark and Laura VOSS, David and Virginia Macey, Appellants (Petitioners),

v.

ALBANY COUNTY COMMISSIONERS; Kim and Peter Stevens; Richard and Beverly Goodman, Appellees (Respondents).

In The Matter of A Petition for A Private Road by Mark & Laura Voss: Kim and Peter Stevens, Appellants (Respondents/Cross–Petitioners),

v.

Mark and Laura Voss, Appellees (Petitioners),

and

The Albany County Board of County Commissioners, Appellees (Respondents).

Nos. 02–68, 02–101.

Supreme Court of Wyoming.

Aug. 14, 2003.

Mark and Laura Voss, Cheyenne, Wyoming; Don W. Riske of Riske & Arnold, P.C., Cheyenne, Wyoming, Representing Mark and Laura Voss and David and Virginia Macey.

Daniel B. Frank of Frank Law Office, P.C., Cheyenne, Wyoming, Representing Kim and Peter Stevens and Richard and Beverly Goodman.

No brief filed, Representing the Albany County Board of County Commissioners.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and PERRY, D.J.

GOLDEN, Justice.

[¶ 1]  Mark and Laura Voss, with co-owners David and Virginia Macey, petitioned the Albany County Board of Commissioners (Board) to establish a private road across their neighbors' property, as authorized by Wyo. Stat. Ann. § 24–9–101 (Lexis 1999). The Board, following the administrative procedure outlined in the statute, established the road in a location other than that requested by the petitioners.  The district court, finding that the Board erred in establishing a road that traversed federal property, reversed and remanded to the Board for the consideration of an alternate location for the road.  The petitioners for the road and the respondents through whose land the road was established filed cross-appeals.  We conclude that the district court's decision should be affirmed in part, reversed in part, and remanded to the Board.

## ISSUES

[¶ 2]  The petitioners for the private road assert the following issues:

1.  Did the district court err in remanding this matter for a good faith determination, after affirming that the Board had jurisdiction to proceed pursuant to W.S. 24–9–101?

2.  May the Board establish a private road beyond the general location of the road proposed by the applicant?

3.  May the Board confirm actions of viewers that are in violation of W.S. 24–9–101 & 103?

4.  May the Board delegate its duty to determine the ultimate fact of the reasonableness of the proposed road to the viewers?

5.  May the Board establish an unreasonable and inconvenient road and fail to properly consider the reasonable road proposed?

6.  May the Board modify the viewers' selection of a road?

7.  May the Board establish a road that had not been marked pursuant to W.S. 24–9–101?

8.  Did the Board err when it concluded that a determinable easement in gross constituted adequate legally enforceable access?

9.  May the Board allow its counsel to participate as an advocate and de facto hearing officer in proceedings before the Board?

10.  May the Board fail to enter its own findings and conclusions and fail to perform its duties as an agency?

In their cross-appeal, Respondents Kim and Peter Stevens present the issues as follows:

1.  Does BLM land containing no restrictions on use by motor vehicle constitute a public road such that it is not a factor in determining whether a landowner's property is landlocked under W.S. § 24–9–101?

2.  If crossing BLM land is a factor, does a Right of Way Grant issued by the BLM pursuant to the Federal Land Policy and Management Act, 43 U.S.C. § 1761 and the regulations at 43 C.F.R. Part 2800, which is for a term of 30 years and renewable, constitute "an outlet to, or connection with a public road" under W.S. § 24–9–101?

## FACTS

[¶ 3]  In 1996, Mark and Laura Voss purchased 151 acres of land near the Buford exit

of Interstate Highway 80 in Albany County. Vosses and their predecessors in title usually accessed the property from the highway exit, first crossing land owned by Richard and Beverly Goodman, then proceeding upon the southern edge of the Stevens property, and finally across federal land managed by the Bureau of Land Management ("BLM"). This access route was referred to below as "the Highway–BLM Road." An alternative means of access is from the Crystal Lake Road, which is east of the Voss property and runs generally north and south from the Buford exit. This means of access required Vosses to travel westward from Crystal Lake Road across the Stevens property before reaching their own land. This "Creek Road" parallels South Crow Creek which effectively bisects the Stevens property but avoids the Goodman and BLM properties. The record shows both methods of access were used at times by Vosses and their predecessors in title, but no access easements were of record when Vosses purchased their land in 1996.

[¶ 4] For two years after purchasing the property Vosses attempted to secure easements from their neighbors in order to formally secure their property access. In June 1997, the Stevenses tendered to Vosses a restricted easement for their portion of the Highway–BLM Road, the restriction being that the easement would lapse if Vosses ever conveyed less than their entire 151–acre parcel. In December 1997, the BLM issued a "Right-of-Way Grant" to Vosses for the portion of the route that crossed BLM property. The grant is for a term of thirty years and is renewable if Vosses have not violated its terms at the time of renewal. In February 1998, the Goodmans delivered to Vosses an unrestricted easement over their portion of the Highway–BLM Road. This easement was recorded February 12, 1998.

[¶ 5] In March 1998, Vosses offered to purchase an unrestricted easement from the Stevenses for the Highway–BLM Road, as well as a separate easement for the Creek Road. Negotiations apparently broke down at that point. Although the timing of events is disputed by the parties, the precise chronology is not relevant to the issues. Vosses filed with the Board of County Commissioners a notice of intent to petition for a private road, while the Stevenses cut off Vosses' access to the Creek Road and recorded a copy of the restricted easement for Vosses' use of the Highway–BLM Road. Vosses then filed their petition for establishment of a private road in January 1999, claiming that their property was landlocked and seeking to establish the Creek Road as a private road across the Stevens property. Although the only property affected by the Creek Road is the Stevens property, Vosses also notified the Goodmans of the private road petition because Goodmans hold a mortgage on the Stevens property.

[¶ 6] The first hearing in the matter was held on March 2, 1999, following which the Board made no express factual findings but appointed viewers "to examine the various possibilities for access and determine the location of a private road according to the requirements set out by the Wyoming Statutes."[1] In an April 23, 1999, ruling on a motion by Vosses, the Board further instructed the viewers to "proceed to meet as required by statute to view and locate a private road and assess damages to be sustained thereby, and make a report thereof as required by law."

[¶ 7] The viewers met at the parties' property on May 11, 1999, visited separately with the Vosses and Stevenses, and submitted their report to the Board on June 29, 1999. They examined both the proposed Creek Road and the Highway–BLM Road.

1. The entirety of the Board's order after the first hearing on necessity stated:

Upon the Application of Mark and Laura Voss, et al., for the appointment of viewers to establish the location of a private road pursuant to law:

The Board having provided a full hearing in which applicants for a private road were heard, and testimony was taken from appli-cants and from those neighboring landowners present to object to the applications, and from a former neighbor by telephone, and the Board having given the matter full consideration, it is hereby determined:

That viewers ought to be, and will be, appointed to examine the various possibilities for access and determine the location of a private road according to the requirements set out by the Wyoming Statutes.

The viewers rejected the Creek Road and recommended that the private road be established substantially as the Highway–BLM Road existed, with one modification. The modification would be to move the right-of-way where it crossed the Goodman property, to keep it entirely on the Goodman property and avoid encroachment on the property of another landowner who had not been made a party to the proceeding. The Board conducted a hearing on August 2, 1999, at which the parties questioned the viewers and presented arguments to the Board. Following the filing and dismissal as unripe of several district court petitions for review, the Board issued an "Order Confirming Viewers Report" on March 7, 2000, directing the petitioners to prepare and file a formal plat of the modified Highway–BLM Road. The Board accepted the plat and issued its final order in the matter on April 17, 2001. The road established by the Board's order was the Highway–BLM Road, with a slight detour to avoid where the road encroached on property of an owner who had not been made a party to the proceeding.

[¶ 8] Petitioners and Respondents both petitioned for review of the Board's decision. The district court concluded that the matter should be remanded to the Board, ruling that the Highway–BLM Road did not provide the Vosses adequate legal access to their land because the BLM Right-of-Way Grant does not provide legally enforceable permanent access. The district court also instructed the Board on remand to make an express determination of Petitioners' good faith in bringing the petition in the first instance. Vosses appealed; Respondents Stevens and Goodman filed a cross-appeal.

## STANDARD OF REVIEW

[¶ 9] Appellate review of administrative decisions is pursuant to Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2003):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determi-

nations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

See *Sinclair Oil Corp. v. Wyo. Public Serv. Comm'n*, 2003 WY 22, ¶ 6, 63 P.3d 887, ¶ 6 (Wyo.2003); *Newman v. State ex rel. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 9, 49 P.3d 163, ¶ 9 (Wyo.2002). Questions of law raised in an administrative context are reviewed by this Court de novo. *Sinclair Oil Corp.*, ¶ 7; *State by and through Dep't of Rev. v. Buggy Bath Unlimited, Inc.*, 2001 WY 27, ¶ 6, 18 P.3d 1182, ¶ 6 (Wyo.2001). When an agency has not applied the correct rule of law, we correct the agency's error. *Id.* We recently stated these principles in the context of a private road action in *Mayland v. Flitner*, 2001 WY 69, ¶ 10, 28 P.3d 838, ¶ 10 (Wyo.2001).

[¶ 10] In reviewing factual issues in an administrative review, as we are required to do pursuant to § 16-3-114(c)(ii)(E), we must determine if there exists substantial evidence in the record to support the agency's decision. Substantial evidence is "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *McTiernan v. Scott*, 2001 WY 87, ¶ 11, 31 P.3d 749, ¶ 11 (Wyo.2001).

That duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. Occasionally, the process of review will necessarily require the reviewing court to engage in an assessment of the facts adduced during the administrative hearing. That assessment does not usually involve a reweighing or reconsideration of the basic facts found by the agency. However, as a byproduct of that process, the reviewing court may arrive at an ultimate conclusion derived from those basic facts that is different from the agency's. A court will reach a different conclusion based on the evidence only in those situations where the agency's conclusion is clearly contrary to the weight of the evidence.

*Id.* at ¶ 16 (citation and footnote omitted).

### DISCUSSION

■ [¶ 11] Vosses' major contention on appeal is that the road established by the Board does not provide them with the type of access to their lands guaranteed by Wyo. Stat. Ann. § 24–9–101 *et seq.* They contend the BLM–Highway Road is inadequate for two reasons: it crosses the BLM land under a mere license, and the easement across the Stevens property is restricted by a condition subsequent.

[¶ 12] The private road statute requires the Board to initially conduct a hearing to determine "the necessity of the road" petitioned for by "any person whose land has no outlet to, nor connection with a public road." Wyo. Stat. Ann. § 24–9–101 (Lexis 1999). We said in *McGuire v. McGuire*, 608 P.2d 1278, 1286 (Wyo.1980), and affirmed in *Reaves v. Riley*, 782 P.2d 1136, 1137 (Wyo. 1989), that the "no outlet to, nor connection with" language means "no legally enforceable, existing outlet to nor connection with a public road." Also in *Reaves*, at 1137, we quoted from *McIlquham v. Anthony Wilkinson Live Stock Co.*, 18 Wyo. 53, 63, 104 P. 20, 22 (Wyo.1909), that the access provided for in the statute must be an "incorporeal right appurtenant to the estate granted, not a personal right or one incident to personal property."

[¶ 13] The BLM was not a party to the private road proceeding, nor has the United States waived its sovereign immunity for suits against it by private individuals seeking private roads. *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926 (10th Cir.1975). Vosses' right to cross the federal land is pursuant to a "Right of Way Grant" which they obtained from the BLM in December 1997. The grant is made pursuant to the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.* The right-of-way grant includes the following terms:

c. This instrument shall terminate on 30 years from its effective date....

d. This instrument may be renewed. If renewed, the right-of-way or permit shall be subject to the regulations existing at the time of renewal and any other terms and conditions that the authorized officer deems necessary to protect the public interest.

Right–of–Way Grant/Temporary Use Permit, Serial Number WYW–141561. The document continues with several pages of regulations that are in fact conditions upon the Vosses' right to renew. 43 C.F.R. § 2803.6– 5 (1999). The right-of-way is assignable only with the approval of the BLM. *Id.* at § 2801.1–1(e). The right-of-way may be suspended or terminated by the BLM upon breach of its terms prior to the expiration of 30 years. *Id.* at § 2803.4(b)-(d). Without determining the exact nature of the grant, it is abundantly clear that the Vosses' permit is personal to them and does not pass automatically upon conveyance of the property. As in *Reaves*, the permit is not an appurtenant right and "therefore, does not constitute an outlet or connection within the purview of the statute." 782 P.2d at 1137.

[¶ 14] Since the BLM Road is not adequate under *Reaves* and the BLM has not made itself subject to the Board's jurisdiction, the petition must be remanded to the Board for reconsideration in a manner consistent with this decision. The remand renders many of the issues raised by the parties moot; however, we will address some of those issues that are likely to recur upon remand. *McGuire*, 608 P.2d at 1286.

[¶ 15] Several of the Vosses' issues relate to the Board's authority to establish a private road other than that proposed in the petition. "The legislature obviously intended to allow the applicant to choose the general location of the [proposed] road." *Dunning v. Ankney,* 936 P.2d 61, 65 (Wyo.1997). However, the statute also grants the viewers substantial leeway in locating the road:

The viewers shall then proceed to locate and mark out a private road in accordance with the application *or in such other manner and location they deem appropriate,* provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who was not given notice of the application.

§ 24–9–101 (emphasis added).

[¶ 16] The legislative history of this section is informative, as the same section until 1985 did not contain the emphasized language, and the title of the bill amending the law that year included in its purpose "authorizing viewers to locate a private road other than as indicated in the application...." 1985 Wyo. Sess. Laws ch. 56. Although an applicant may propose alternative locations for a road, *Dunning,* 936 P.2d at 65, the applicant does not have authority to limit the Board to the consideration of one road only. Upon remand, therefore, the Board is not constrained to consideration of the Creek Road proposed by the Vosses.

[¶ 17] Although the 1985 version of the law is controlling in this case, it is informative in interpreting it that the legislature in 2000 further limited an applicant's ability to control the location of a private road when it more expressly authorized viewers to propose and commissioners to consider possible alternatives to the route proposed by the petitioner, joining additional landowners as parties if necessary. Wyo. Stat. Ann. § 24–9–101 (LexisNexis 2001).

[¶ 18] Applicants make numerous procedural challenges to the actions of the Board and viewers, including: 1) the lack of an order directing the viewers to meet and locate a private road as statutorily required; 2) the failure of the viewers to take an oath; 3) a potential conflict of interest by one viewer; 4) the manner in which the viewers met with the parties; 5) Vosses' opportunity to examine the viewers; and, 6) the viewers' role in determining the reasonableness of the road.

[¶ 19] We do not find it necessary to examine each one of the alleged procedural defects in detail. Although the Board and viewers should have presented us with a more complete record to document compliance with statutorily-required procedures, we find that the alleged irregularities are generally de minimis and that the Board substantially complied with procedural requirements of the statute and due process. The applicants in many of their allegations seem to confuse the role of the viewers and the Board. Although the procedure for the viewers is set out in the statute in some detail, it is the Board that constitutes the administrative agency acting in an adjudicative capacity in a private road proceeding. Due process requirements attach more strictly to the proceedings before the Board than to those of the viewers. *Carney v. Bd. of Cty. Comm'rs of Sublette Cty.,* 757 P.2d 556, 560 (Wyo. 1988). The record shows that the parties were notified through counsel of the viewers' schedule, and in fact Goodmans and Vosses appeared and were heard on site by the viewers, although not in the presence of one another. The parties were afforded abundant opportunity to present evidence and legal argument at formal hearings before the Board, as well as to voir dire the viewers and cross-examine the respondents' witnesses in formal hearing.

[¶ 20] The Board held its first hearing on March 2, 1999, at which both petitioners and respondents presented testimony subject to cross-examination. The Board then issued an order appointing viewers on March 16, 1999, and a clarifying order on April 23, 1999. Although the Board in its orders appointing viewers did not expressly find that the Vosses were landlocked, that finding is necessarily implied in its decision to appoint viewers and was explained further in the Board's later Findings of Fact and Conclusions of Law when it stated that "due to the fact that the easement narrows to approximately three

(3) feet in width at the west end of the Goodman easement, the Petitioners are effectively landlocked." Although the Board should have taken greater care to document compliance with the statutory requirements, the Board's second order directed the viewers to act in accord with the Wyoming private road statute. Moreover, the Board, viewers and parties all subsequently acted upon the assumption that the Vosses had established that their property was landlocked, and no misapprehension, confusion or prejudice resulted.

■ [¶ 21] The record does not clearly establish whether the viewers took an oath to "faithfully and impartially perform their duties," as required by the statute. One of the viewers testified under oath that he had been sworn, while another could not remember being sworn. A presumption of regularity attaches to such administrative proceedings, and the failure to subscribe to an oath in the exact manner prescribed in a statute is a mere irregularity that does not invalidate the entire procedure, *Miller v. Hagie*, 59 Wyo. 383, 395, 140 P.2d 746, 750 (1943), as the failure to swear a witness in a judicial proceeding does not necessarily create grounds for a new trial. *Heier v. State*, 727 P.2d 707, 709 (Wyo.1986).

■ [¶ 22] Vosses complain that one of the viewers was a member of a law firm which had previously represented Respondent Goodman. The statute requires the Board, if it finds that a private road is necessary, to appoint "three (3) disinterested freeholders and electors of the county, as viewers and appraisers...." § 24–9–101. Vosses cite case law interpreting the Wyoming Rules of Professional Responsibility for attorneys, assuming that, since one of the viewers was an attorney, the test of disinterestedness is the same as that for conflict of interest under those rules. However, those rules and cases concern questions of conflict arising in an attorney's representation of a client and are not controlling. The Board took evidence on the issue at the hearing following the viewers' report on August 2, 1999, and concluded that the viewer was not a member of the law firm at the time of the prior representation, that there was no current representation, that he did not know the people involved and that he had no knowledge about the prior representation. The Board's conclusion that the viewer was disinterested in the private road matter is thus supported by substantial evidence and will not be disturbed on appeal.

■ [¶ 23] Petitioners next challenge the viewers' actions because they failed to meet simultaneously with both sides when viewing the affected property; however, they offer no authority for the proposition that they are entitled to attend all of the viewers' discussions or to a hearing before them. As we stated in *Carney*, the parties to a private road action are afforded due process by their right to a contested case hearing before the Board, a right to which the parties availed themselves. 757 P.2d at 560. There is no basis in the statute or considerations of due process for dual hearings.

■ [¶ 24] The petitioners also contend that the Board improperly delegated to the viewers the determination of the reasonableness of the road's location. In addition to bootstrapping upon their argument that the Board and viewers could consider only the road proposed by petitioners, they base this contention upon the Board's conclusions of law that incorporated the viewers' conclusions and recommendations, specifically their conclusion that "[t]he Petitioners and Respondents had the opportunity to address the viewers with comments as to a reasonable route to ensure legal access ..." and that "[t]he viewers' choice of routes was appropriate...." Those conclusions came only after the Board received the viewers' report and heard the testimony of the viewers and the evidence of the affected parties. The process complained of is simply that required by the private road statute:

> The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who was not given notice of the application. The proposed

road ... shall be located so as to do the least possible damage to the lands through which the private road is located.

§ 24–9–101. The viewers "will be knowledgeable with respect to the local conditions and will apply that knowledge and their common sense in arriving at a determination." *Carney,* 757 P.2d at 561. The process apparently advocated by the petitioners in this case would reduce the role of the viewers to mere hikers whose only function is to mark on the ground the road proposed in the application.

[¶ 25] We agree with the petitioners that the district court erred in instructing the Board to consider on remand whether the Vosses' private road petition was filed in good faith. We stated in *McGuire,* 608 P.2d at 1286, that "[t]he applicant has the responsibility for studying alternative routes and asking in good faith for one that is reasonable and convenient. Only then may the applicant be said to have complied with the law so that the county commissioners have jurisdiction to proceed." *See also, Dunning,* 936 P.2d at 65. In this regard, the posture of the current case is identical to that in *Mayland v. Flitner,* 2001 WY 69, 28 P.3d 838 (Wyo.2001), a private road appeal in which we reiterated a definition of "good faith." *Id.* at ¶ 16. The Board of Commissioners did not make a specific finding of good faith in either case; however, as in *Mayland,* it is clear from the record that allegations of bad faith were brought before the Board during the contested case hearings and strenuously litigated. Although petitioners were requesting the Creek Road route, they testified about the two existing routes to their property and why the proposed route was preferable. They convinced the Board that they were landlocked "due to the fact that the easement narrows to approximately three (3) feet in width at the west end of the Goodman easement." Under these circumstances, we agree with petitioners that the requisite finding of good faith is implicit in the Board's conclusion that a private road is necessary.

[¶ 26] Finally, we consider the effect of the restrictive easement granted by the Stevenses for the portion of the Highway–BLM Road which crosses their property. Vosses contend that the Stevens easement, because it is subject to termination in the event Vosses transfer less than all of their property, does not give them the "legally enforceable" right of access required by the statute and *Reaves v. Riley,* 782 P.2d 1136, 1137 (Wyo.1989). They argue that the possibility of termination renders the easement the functional equivalent of an easement in gross, personal to the Vosses, rather than an appurtenant easement.

[¶ 27] We recently addressed easements in *Hasvold v. Park Cty. Sch. Dist. No. 6,* 2002 WY 65, 45 P.3d 635 (Wyo.2002):

An easement is defined as an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property. In construing an easement, we seek to determine the intent of the parties to the easement. We begin by attempting to glean the meaning of the easement from its language. If the language of the easement is clear and unambiguous, we interpret the easement as a matter of law, without resorting to the use of extrinsic evidence to determine the parties' intent. If, however, the language is ambiguous, then the court looks to extrinsic evidence to ascertain the parties' intent.

*Id.* at ¶ 13 (citations and quotation marks omitted). We distinguish between appurtenant easements and easements in gross as follows:

An easement is appurtenant to the land when the easement is created to benefit and does benefit the possessor of the land in his use of the land. In contrast, an easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor. An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant.

*Id.* at ¶ 14 (citations and quotation marks omitted).

[¶ 28] Also in *Hasvold* at ¶ 21, we reiterated the six "badges" of an appurtenant easement that we first identified in *R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 586 (Wyo.1999):(1) that the easement was created to benefit a specific tract of land; (2) that the grant was for a perpetual right-of-way for

ingress and egress; (3) that the grantee has the right to inspect and maintain the easement; (4) that the right is not limited to the possessor personally; (5) that the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) that the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates.

[¶ 29]  Applying these criteria to the easement given by the Stevenses to Vosses, we see that it incorporates some but not all of the badges of an appurtenant easement. The easement document identifies the grantors and grantees of an "ingress and egress easement" that is described by metes and bounds across the Stevens property but does not describe the Vosses' benefited land. The document recites that the easement is for the use of "the Grantors [sic]² , their heirs, personal representatives and assigns" without stating that the grant is perpetual. Most significantly, the easement contains the limitation that "[t]he easement granted herein shall automatically terminate should Grantees, their heirs, personal representatives or assigns ever sell or convey any portion of the benefitted [sic] lands in a quantity of acres less than exists as of the date of the granting of this easement." This easement document is sufficiently ambiguous to require inspection of extrinsic evidence to determine the nature of the easement.

[¶ 30]  On March 2, 1999, Kim Stevens signed and recorded an "Affidavit Affecting Title to Correct and Clarify Previously Recorded Instrument," which recited the full names of the grantors and grantees of the easement, included a legal description of the benefited lands, and stated that the previously-granted ingress and egress easement "was intended to benefit and be appurtenant to" the Vosses' property. This was apparently done unilaterally, on the day of the necessity hearing. Mrs. Stevens also testified that the purpose of the affidavit was to clarify their intention that the access easement be appur-

tenant to the Voss property but that it not be expanded to a subdivision easement without renegotiation and additional consideration. This resolves any ambiguity as to the Stevenses' intent to convey an appurtenant easement, leaving only the legal question of whether an appurtenant easement may automatically lapse upon subdivision of the dominant estate.

[¶ 31]  The question is whether, under the above standards, the restriction in the easement constitutes such a limitation on the transferability of the easement to Vosses' successors in title, as to render it in effect a personal right of the Vosses. Although the grant may appear to be in perpetuity, in more direct terms the easement is granted only as long as the Vosses or their successors do not sell off any part of the Voss property as it now exists. The easement may be analogized to a fee subject to divestment, rather than a fee simple interest. We have held that upon subdivision of a dominant estate, the subdivision grantees succeed to the privileges of use of the servient estate authorized by an appurtenant easement. *Mueller v. Hoblyn,* 887 P.2d 500, 505 (Wyo. 1994). Since the effect of the restriction is to prevent transferability of the easement to all transferees receiving anything less than the entire Voss property, we conclude that the restriction is in fact the type of limitation on transferability that is inconsistent with an appurtenant easement.

[¶ 32]  The effect is more than hypothetical or inchoate, as there was unrebutted testimony at the hearing that the current value of the Voss property is diminished if future access is put into question by the easement restriction. We stated in *Snell v. Ruppert,* 541 P.2d 1042, 1046 n. 5 (Wyo.1975), *overruled on other grounds, Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo. 1991), that the premise of the private road statute is that "[t]here is a public interest in giving access by individuals to the road and highway network of the state as a part and an extension thereof for economic reasons and the development of land as a resource

---

**2.**  The typographical error does not void the easement where the obvious intent is that the *Grant-* *ors* convey an easement to the *Grantees.*

for the common good, whether residential or otherwise." In *Hulse v. First American Title,* 2001 WY 95, ¶¶ 33–35, 33 P.3d 122, ¶¶ 33–35 (Wyo.2001), which involved vacating a private road, we disapproved of an easement that was limited to "farming and ranching purposes" that did not provide the type of "legally enforceable, unrestricted access to a public road" required by the private road statute. Upon remand, therefore, if the Board determines that the private road will include the easement through the Stevens property, then the private road will be free of the restriction contained in the Stevens–Voss grant of easement.

## CONCLUSION

[¶ 33] The determination of the Board of Commissioners that Petitioners established the necessity of a private road is affirmed, including an implied finding of Petitioners'

good faith in bringing the petition. The Board and viewers have authority, even a statutory obligation, to consider any reasonable, convenient location for the private road. However, the permissive use of BLM property under a 30–year license is not sufficient to give the Petitioners legally enforceable access, nor is an easement across Respondents' property that would lapse if the Petitioners ever subdivide their property. The case is remanded to the Board of Commissioners for proceedings consistent with this opinion, as provided in the private road statute and the Wyoming Administrative Procedure Act.