# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 59

### APRIL TERM, A.D. 2017

### May 17, 2017

PATRICK J. WHALEY and MARY L.
WHALEY,

Appellants
(Petitioners),

v.

S-16-0141

FLITNER LIMITED PARTNERSHIP, a
Wyoming Limited Partnership,

Appellee
(Respondent).

*Appeal from the District Court of Big Horn County*
*The Honorable William J. Edelman, Judge*

*Representing Appellants:*

Barry V. Crago, Crago Law Offices, P.C., Buffalo, Wyoming; Tucker J. Ruby, Buffalo, Wyoming; Greg L. Goddard, Goddard and Vogel, P.C., Buffalo, Wyoming. Argument by Mr. Ruby.

*Representing Appellee:*

Randy L. Royal, Randy L. Royal, P.C., Greybull, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]     Patrick and Mary Whaley (the Whaleys) sought the establishment of a private road along the upper portion of Black Mountain Road in Big Horn County.  The Big Horn County Board of County Commissioners (the Board) established a private road along the lower portion of Black Mountain Road, a route which the Whaleys contend was procedurally barred and is illogical, unproductive, and uneconomic.  The Whaleys appeal and we affirm.

## ISSUES

[¶2]     We rephrase the issues as follows:

1.    Were the viewers and appraisers authorized to consider an alternate route that was not located on land owned by parties originally identified by the Whaleys in their petition for a private road?

2.    Was the establishment of Lower Black Mountain Road as a private road supported by substantial evidence?

## FACTS

[¶3]     The Whaleys own property east of Shell in Big Horn County, Wyoming.  Their property has been in the Whaley family since it was homesteaded, over 100 years ago, and the Whaleys acquired it in 1988.  The Whaley property is surrounded on all sides by private land and has no legally enforceable outlet to a public road.  Black Mountain Road has historically been used to access the Whaleys' and other landowners' property in the area.  All travel on Black Mountain Road is by permission of the various landowners along the road, but the landowners do not have legally enforceable access to their property.  The Whaleys and their family used both the upper and lower portions of Black Mountain Road until the fall of 2009, when Flitner Limited Partnership locked a gate on the upper portion of the road, closing off access along the upper route to the Whaleys' property.

[¶4]     Black Mountain Road begins at Forest Service Road 17, heads south and west and down in elevation, until it connects with BLM Road 1115[1] on the west.  For the purposes of this litigation, the road can be divided into two parts: the eastern portion of the road, leading from Forest Service Road 17 west to the Whaleys' property (Upper Black Mountain Road), and the western portion, which heads east from BLM Road 1115 to the Whaleys' property (Lower Black Mountain Road).

---

[1] While the parties, the viewers and appraiser, and the Board all refer to this road as BLM Road 115, the maps label it as Road 1115.  In this opinion, we refer to the road as BLM Road 1115 or Road 1115.

1



[¶5] The two portions of the road differ significantly. Lower Black Mountain Road has not been maintained and is rugged, eroded, steep, and difficult to travel. Access via Lower Black Mountain Road begins in the spring and lasts later into the fall. By contrast, Upper Black Mountain Road is smoother, without big drop-offs, and has been maintained by logging operations on various landowners' properties and by the Flitners. Upper Black Mountain Road, however, opens much later in the summer, sometimes not until mid-July, and closes earlier in the fall.

[¶6] On April 7, 2011, the Whaleys applied for private road access to their property along Upper Black Mountain Road, through property owned by Flitner Limited Partnership, North Woods Capital Partnership, LP (North Woods), and L & M Good Partnership. After a hearing, the Board concluded that the Whaleys "did not act in good faith" because they failed to explore "the possibility of the establishment of a private road on the westerly or lower portion of the Black Mountain Road[.]" The Whaleys appealed and the district court reversed the Board's decision, finding it was not supported by substantial evidence; the Whaleys "do not have legally enforceable access to their property; and they brought their application for a private road in good faith, with a request for a route that is reasonable and convenient." The district court remanded the case to the Board, directing it to proceed with the application and to appoint viewers and appraisers pursuant to Wyo. Stat. Ann. § 24-9-101(h) (LexisNexis 2011).

[¶7] The viewers and appraisers determined that Eleven Bar One might be affected by an alternate route, in addition to the property owners already notified, and directed the Big Horn County Clerk to provide notice to Eleven Bar One prior to their site visit. That notice was provided on July 11, 2014. On August 13, 2014, the viewers and appraisers conducted an on-site inspection and then submitted their report to the Board. The viewers and appraisers recommended

> using the lower road designated Black Mountain Road. This road has been used in the past and is presently used by the affected parties and other property owners to access their lands.
>
> With the understanding that an easement be granted to the Flitner[s] for unrestricted access across the Whaley property; the Flitner[s], in return, must grant an easement to the Whaley[s] that they can cross their lands.
>
> These easements pertain to that section of existing road beginning at the east end of BLM road [1115], which is a public road and terminating at the east boundary of the Whaley property.

3

The Board issued its findings accepting the viewers' and the appraisers' recommendation and ordering that a private road be established on Lower Black Mountain Road from BLM Road 1115 through Eleven Bar One, Flitner Limited Partnership, and Flitner Ranch Limited Partnership properties, and through the Whaleys' property to its border with the John W. Stouffer Trust #2 (North Woods) property. The Board also determined that no damages should be awarded to the property owners and required the Whaleys to supply a legal description of a thirty-foot-wide private road along the Lower Black Mountain Road route. Finally, the Board ordered that the "Affected Parties herein, namely Eleven Bar One, Flitner Limited Partnership, Flitner Ranch Limited Partnership, and the John W. Stouffer Trust #2 [North Woods], their successors and assigns, shall be granted an easement to use the private road . . . as a condition of the establishment" of the road.

[¶8]    The Whaleys sought review in the district court. After a hearing, the district court issued its order affirming the portion of the Board's order establishing a private road along Lower Black Mountain Road, but reversing the Board's grant of easements over the newly established road. The Whaleys appealed.

### *STANDARD OF REVIEW*

[¶9]    Review of the Board's decision regarding an application for a private road under Wyo. Stat. Ann. § 24-9-101 is subject to the Wyoming Administrative Procedures Act. We are in the same position as the district court, and our review is governed by Wyo. Stat. Ann. § 16-3-114(c). *In re Private Rd. ex rel. Cross*, 2013 WY 79, ¶ 8, 304 P.3d 932, 934 (Wyo. 2013); *Mayland v. Flitner*, 2001 WY 69, ¶ 10, 28 P.3d 838, 843 (Wyo. 2001). Section 16-3-114(c) requires us to review the entire record and:

> (ii)   Hold unlawful and set aside agency action, findings and conclusions found to be:
> 　　(A)   Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> 　　. . . .
> 　　(C)   In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> 　　. . . or
> 　　(E)   Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015).

[¶10]  Questions of law are reviewed de novo. *Voss v. Albany Cty. Comm'rs*, 2003 WY 94, ¶¶ 9-10, 74 P.3d 714, 718-19 (Wyo. 2003) (*Voss I*). In reviewing factual issues, we determine if substantial evidence in the record supports the agency's decision. *Mayland*,

2001 WY 69, ¶ 10, 28 P.3d at 843. Substantial evidence is "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *McTiernan v. Scott*, 2001 WY 87, ¶ 11, 31 P.3d 749, 754 (Wyo. 2001); *see also Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 7, 135 P.3d 598, 603 (Wyo. 2006).

## *DISCUSSION*

**I.** ***Were the viewers and appraisers authorized to consider an alternate route that was not located on land owned by parties originally identified by the Whaleys in their petition for a private road?***

[¶11]   The private road statutes are the sole remedy for landlocked landowners to obtain access to their property. *Reidy*, 2006 WY 69, ¶ 10, 135 P.3d at 603. We apply the 2011 version of the Wyoming private road statutes, Wyo. Stat. Ann. §§ 24-9-101 through 24-9-104 (LexisNexis 2011), as the Whaleys brought their initial application in 2011. *See Mullinax Concrete Serv. Co. v. Zowada*, 2012 WY 55, ¶ 11, 275 P.3d 474, 477 (Wyo. 2012) (determining that an amended statute for private road establishment does not apply retroactively).

[¶12]   Sections 24-9-101 through 24-9-104 allow landowners who have "no outlet to, nor connection with a public road" to apply for a private road leading from their property to a convenient public road. Wyo. Stat. Ann. § 24-9-101(a) (2011). The party applying for a private road must first file an application with the board of county commissioners (the board) and give written notice of the application to "the affected parties of all lands over which" the road may pass. Wyo. Stat. Ann. § 24-9-101(b) (2011). After receiving notice, each affected party may then provide notice to the board and the applicant of the location of any alternate routes proposed by the affected party. *Id*. The board will then schedule an initial hearing on the application. The applicant must then provide written notice of that hearing to "all affected parties named in the original application, all landowners affected by any alternative routes proposed . . . and any other landowners the board believes may be affected by the application or by any alternative route which may be considered by the board." Wyo. Stat. Ann. § 24-9-101(e) (2011).

[¶13]   At the hearing, the board initially determines whether the applicant has legally enforceable access to his land. Wyo. Stat. Ann. § 24-9-101(c) (2011). If the board finds that the applicant has no legally enforceable access, it appoints three disinterested viewers and appraisers whose task it is "to locate and mark out a private road and alternative routes as they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any affected party who was not given notice under subsection (e) of this section." Wyo. Stat. Ann. § 24-9-101(h) (2011). To accomplish this task, the viewers and appraisers must meet on-site to view the proposed road. The statute requires the viewers to "give notice in writing to the applicant and affected parties of the lands through which the proposed road or any alternative road may pass, of the

5

time and place where the viewers will meet . . . ." *Id*. The viewers and appraisers must "recommend the most reasonable and convenient route" and may "recommend specific conditions that the board place on the road." *Id*.

[¶14] The viewers and appraisers then submit a report containing their recommendations to the board. Wyo. Stat. Ann. § 24-9-103(a) (LexisNexis 2011). After receiving that report, the board is required to hold a second hearing. *Id*. "[A]ll affected parties having an interest in the lands through which the proposed road or any alternative road may pass" are to receive notice of the hearing so that they can "address the report." *Id*. The "board may either accept, reject or modify the report and recommendations. The board shall select the most reasonable and convenient route for the access . . . ." *Id*.

[¶15] The Whaleys contend that viewers and appraisers are required by this statutory scheme to locate the road within the lands designated in the applicants' original notice pursuant to § 24-9-101(e), and they do not have the authority to choose an alternative route outside of those lands. The Whaleys argue that while viewers and appraisers are not bound to choose the route requested by the applicants, the statute requires that they locate the private road, including any alternate they propose, through the lands owned by those originally notified in the action. The Whaleys point out that Eleven Bar One, which owns property along Lower Black Mountain Road, was not given notice of their application for a private road because it does not own land along Upper Black Mountain Road, their proposed route. Thus, they argue that the alternative route selected by the Board, Lower Black Mountain Road, was statutorily precluded because it crosses land owned by Eleven Bar One, a landowner not originally notified.

[¶16] In support of this contention, the Whaleys rely on *Goodman v. Voss*, 2011 WY 33, ¶ 31, 248 P.3d 1120, 1129 (Wyo. 2011) (*Voss III*) where we stated that the applicant for a private road

> has the right to choose any reasonable and convenient route for the proposed private road, and neither the Board nor neighboring landowners can force the petitioner to accept an illogical, uneconomic, and unproductive road. . . . ***That leads to the logical conclusion that it is the petitioner who selects the persons to be notified of the petition. In turn, that process limits the possible locations for the road because the viewers and appraisers must locate the road within the lands of the property owners who were given notice.*** However, the petitioner only selects the general location of the road; it is the duty of the viewers and appraisers to establish the exact location of the road so that it will do the least possible damage to the land through which it passes.

6

(Emphasis added and internal quotation marks and citations omitted.) *Voss III* was the third in a line of cases in which we considered a series of issues arising from the Voss's 1999 application for a private road. *See Voss I*, 2003 WY 94, ¶ 5, 74 P.3d at 717 (determining necessity of private road and whether permissive use of BLM road for a limited term and a conditional easement are sufficient to provide legally enforceable access); *Voss v. Goodman*, 2009 WY 40, ¶ 3, 203 P.3d 415, 417 (Wyo. 2009) (*Voss II*) (addressing district court's jurisdiction to consider declaratory judgment action seeking a declaration that the board acted without authority to grant temporary access to petitioners for private road); *Voss III*, 2011 WY 33, ¶ 33, 248 P.3d at 1129 (determining that the board's extension of the road into Goodman's property violated the private road statute because it focused on damage to the petitioner's property instead of damage to the property taken for a private road).

[¶17] The 2011 statute indicates that ***initially*** the applicant selects the lands through which the proposed private road will pass and provides notice to the owners of those lands, the "affected parties." Wyo. Stat. Ann. § 24-9-101(b) (2011). The language cited by the Whaleys in *Voss III* goes farther, restricting the location of the private road to the lands of property owners originally notified by the applicant. However, all three *Voss* cases applied the 1985 private road statutes, which are substantially different than the later versions of the statutes in that they granted the applicant for a private road more control over the location of that road. *See Voss III*, 2011 WY 33, ¶ 30, 248 P.3d at 1128; *Voss II*, 2009 WY 40, ¶ 13, 203 P.3d at 420; *Voss I*, 2003 WY 94, ¶ 17, 74 P.3d at 720.

[¶18] The 1985 statute required the applicant to provide notice to "the owner, resident agent, or occupant of all lands over which the private road" may pass and directs the viewers and appraisers to "give notice in writing to the owner, resident agent or occupant of the lands over which the road is proposed to be laid of the time and place where the viewers will meet . . . ." The statute then required the viewers "to locate and mark out a private road in accordance with the application or in such other manner and location as they deem appropriate, ***provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who was not given notice of the application.***" 1985 Sess. Laws ch. 56 § 1 (Wyo. Stat. Ann. § 24-9-101(1993)) (emphasis added). This statute "was dramatically changed in 2000, and, as a consequence, many of our cases that predate those amendments are not reliable sources of authority with respect to cases initiated after March 14, 2000." *In re Crago*, 2007 WY 158, ¶ 5, 168 P.3d 845, 847 (Wyo. 2007); *see also* 2000 Sess. Laws ch. 88 §§ 1-3. This caution applies to the *Voss* line of cases.

[¶19] In *Voss I*, we commented:

> Although the 1985 version of the law is controlling in this case, it is informative in interpreting it that the legislature in 2000 further limited an applicant's ability to control the

location of a private road when it more expressly authorized viewers to propose and commissioners to consider possible alternatives to the route proposed by the petitioner, joining additional landowners as parties if necessary. Wyo. Stat. Ann. § 24-9-101 (LexisNexis 2001).

*Voss I*, 2003 WY 94, ¶ 17, 74 P.3d at 720. The relevant portions of the statute changed little between 2000 and 2011. *Compare* Wyo. Stat. Ann. § 24-9-101(e), (h) (2001) and 2000 Sess. Laws ch. 88 § 1 *with* Wyo. Stat. Ann. § 24-9-101(e), (h) (2011).

[¶20] The 2011 version of the statute relied upon in *Voss III* has been amended to instruct the viewers to "mark out a private road and alternative routes as they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any affected party who was not given notice under subsection (e) . . . ." Wyo. Stat. Ann. § 24-9-101(h) (2011). Subsection (e) requires written notice of the board's hearing be sent to "all affected parties named in the original application, *all landowners affected by any alternative routes proposed . . . and any other landowners the board believes may be affected by the application or by an alternative route which may be considered by the board.*" Wyo. Stat. Ann. § 24-9-101(e) (2011) (emphasis added). In addition, the statute requires the viewers and appraisers to notify "the applicant and *affected parties of the lands through which* the proposed road or *any alternative road may pass*" of the date and time of their site visit. Wyo. Stat. Ann. § 24-9-101(h) (2011) (emphasis added).

[¶21] In interpreting statutes, we first look to "the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute." *Rambo v. Rambo*, 2017 WY 32, ¶ 8, 391 P.3d 108, 110 (Wyo. 2017) (citations omitted). The plain language of the statute does not constrain the viewers' and the appraisers' or the board's consideration of a private road to only those lands originally identified by the applicant. If the legislature had intended that result, it would not have provided affected landowners the ability to suggest alternate routes and it would not have included notification of "all landowners affected by any alternative routes" and "any *other* landowners the board believes may be affected by the application or by an alternative route" as categories of persons required to be given notice in addition to those named in the original application. The 2011 version of the statute allows other parties to be given notice and to be included in the process when alternative routes that cross their properties are identified, even if those parties were not notified in the original applicant's notice. Wyo. Stat. Ann. § 24-9-101(b), (e), and (h) (2011).

[¶22] The viewers and appraisers in this case were not prohibited from considering Lower Black Mountain Road as an alternate route even though it crosses land owned by Eleven Bar One, a party not originally identified by the Whaleys in their application for a

private road.[2]  With the exception of Eleven Bar One, all of the landowners along Lower Black Mountain Road also own land along Upper Black Mountain Road.  Thus, they were notified by the Whaleys when they filed their original application and prior to the initial hearing at which the Board was tasked with determining whether the Whaleys had legally enforceable access.

[¶23]  When the viewers and appraisers determined that Eleven Bar One might be affected by an alternate route, Eleven Bar One received notice.  That notice was provided by the Big Horn County Clerk at the request of the viewers and appraisers prior to their site visit, in compliance with Wyo. Stat. Ann. § 24-9-101(h).  The record reveals that Greg Flitner, who owns Eleven Bar One, received notice dated July 11, 2014 from the Big Horn County Clerk by certified mail that his property might be affected by the Whaleys' private road application, that the viewers and appraisers were meeting on July 24, 2014 at 2:00 p.m. on the Whaleys' land, and that he would continue to receive all official correspondence regarding the application.[3]  Eleven Bar One received the notice required and authorized by the 2011 statute.

## II.    Was the establishment of Lower Black Mountain Road as a private road supported by substantial evidence?

[¶24]  Wyo. Stat Ann. § 24-9-103(a) (2011) requires the board to "select the most reasonable and convenient route for the access."  Here the Board was faced with a choice between two existing routes and concluded that Lower Black Mountain Road "is the best route for the private road."  The Whaleys contest this conclusion, and contend that the Board was bound by the district court's statement that Upper Black Mountain Road was reasonable and convenient.  They also assert that the Board's selection of Lower Black Mountain Road as the most reasonable and convenient is not supported by substantial evidence, that the Board should have relied upon our decision in *Mayland v. Flitner*, 2001 WY 69, 28 P.3d 838 (Wyo. 2001), and that Lower Black Mountain Road cannot be the "most reasonable and convenient route" because it is illogical, uneconomic, and unproductive.

[¶25]   The Board made the following relevant findings of fact:

---

[2] At the time of the initial application, it appears that North Woods owned the Eleven Bar One property. It is unclear exactly when the property was transferred from North Woods to Eleven Bar One, but that transfer must have occurred prior to December 2, 2014, the date of the Board's findings because in those findings the Board indicated that "Lower Black Mountain Road crosses . . . property previously owned by North Woods Capital Partnership (Stouffers) and now owned by Eleven Bar One (Greg Flitner)."

[3] Also on July 11, 2014, the Big Horn County Clerk notified counsel for the Whaleys of the viewer and appraiser's meeting and that Greg Flitner had been identified as an additional party "with potential interest."

9

7. Access to the Upper Black Mountain Road from U.S. Forest Service Road 17 is oftentimes limited to use from mid-June through early November because of snow or wet road conditions. Often the Forest Service will close the road between November and June to prevent damage to it. Testimony of all witnesses; Exhibit A, B.

8. The Lower Black Mountain Road, which accesses Applicants' property on its westerly side, is typically open for at least eight months of the year, sometimes more depending on weather. It is always open longer than Upper Black Mountain Road. Testimony of all witnesses.

9. Applicant MARY L. WHALEY testified . . . that she believed that because the quality of the Upper Black Mountain Road was so much better than the Lower Black Mountain Road that the Upper Black Mountain Road would be a more convenient roadway. Testimony of Mrs. Whaley.

10. The Lower Black Mountain Road is difficult to travel. It is largely unmaintained, steep, and with numerous hazards along the way. Testimony of all witnesses.

11. The Lower Black Mountain Road crosses public lands managed by the Bureau of Land Management and owned by the State of Wyoming. Neither the BLM nor the State of Wyoming maintains the road. Testimony of M[r]s. Whaley, Michael Whaley, Keith Neustel.

12. If access is available off of the Forest Service Road, the Upper Black Mountain Road is in superior condition to the Lower Black Mountain Road. Testimony of M[r]s. Whaley, Mr. Whaley, Mr. Neustel, Tim Flitner. However, the upper portion is less rocky with a soil more prone to rutting and scarring. Testimony of Mr. Flitner.

13. The property through which the Black Mountain Road passes is used primarily for trailing livestock and recreation. Testimony of all witnesses.

The Board went on to conclude:

The viewers and appraisers submitted a rather brief report to the Commissioners, stating that the Lower Black Mountain Road has been used in the past and is presently being used by the Affected Parties and other property owners to access property along the road. This is a significant and undisputed fact.

A determination of which route is more convenient must be based at least in part upon when the alternate roads would be available to use. The Lower Black Mountain Road would be open for use a greater part of the year than the Upper Black Mountain Road would be, given the higher elevation and corresponding precipitation at the location where the Forest Service Road and the Upper Black Mountain Road are located.

The Commissioners accept the determination made by the viewers and appraisers and their conclusion that the Lower Black Mountain Road is the best route for the private road.

## A.    Law of the Case

[¶26]  We first examine the Whaleys' claim that the district court ruled on the issue of a reasonable and convenient route in its September 20, 2013 decision letter.  In that letter the court concluded that "[t]he evidence in the record supports a finding that [applicants] do not have legally enforceable access to their property, and they brought their application for a private road in good faith, with a request for a route [Upper Black Mountain Road] that is reasonable and convenient."  The Whaleys argue that based upon this finding, the "case should be over."

[¶27]  Although they cite no authority in support of their argument, we assume that the Whaleys are referring to principles of law of the case or collateral estoppel.  The law-of-the-case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Musacchio v. United States*, --- U.S. ---, ---, 136 S.Ct. 709, 716, 193 L.Ed.2d 639 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506, 131 S.Ct. 1229, 1250, 179 L.Ed.2d 196 (2011)).  "Similarly, collateral estoppel is a preclusion doctrine that bars the relitigation of previously litigated issues."  *Ultra Res., Inc. v. Hartman*, 2015 WY 40, ¶ 59, 346 P.3d 880, 901 (Wyo. 2015).  Both doctrines require a definitive decision by the court on the particular issue before they will apply.  *See id.* at ¶ 64, 346 P.3d at 902 (rejecting application of law of the case and collateral estoppel because the district court had not ruled on the issue).

[¶28]  The question of whether the Whaleys' proposed route was a reasonable one was not before the district court in the 2013 decision.  The issues addressed were whether the Whaleys filed their application in good faith and whether their property was landlocked. Because the district court never decided the question of whether the proposed private road was reasonable or convenient, collateral estoppel and law of the case do not apply.

11

**B. Substantial evidence**

**1. Whaleys' contention that Lower Black Mountain Road is illogical, uneconomic, and unproductive**

[¶29]  The Whaleys assert that the Board's conclusion that Lower Black Mountain Road is the "most reasonable and convenient route" is not supported by substantial evidence because it is illogical, uneconomic, and unproductive.  We have refused to require a landlocked property owner to choose a "wholly illogical, uneconomic, and unproductive road . . . ."  *Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 290 (Wyo. 1991).  The Whaleys complain that the Board disregarded the "overwhelming weight of the testimony showing that . . . [it] requires tens to hundreds of thousands of dollars to make [Lower Black Mountain Road] useable . . . ."  The only evidence in the record concerning the cost of the road was given by the Whaleys' expert, Keith Neustel.  Mr. Neustel's testimony regarding the economic feasibility of the road amounted to his statement that it would "probably" cost "tens of thousands of dollars, if not hundreds of thousand]s]."  The Board did not give any weight to this evidence.  The Board has wide latitude in determining the weight to be given to testimony and Mr. Neustel's testimony itself provides a valid reason for the Board's failure to give it weight: he had not "really put[] a pencil to it."  *See In re Greene*, 2009 WY 42, ¶ 34, 204 P.3d 285, 295 (Wyo. 2009).

[¶30]  Other evidence regarding the economics and productivity of the road includes the testimony of Terry Meuller and Steve Cannady, local ranchers who run livestock in the same area.  Both of these witnesses provided evidence supporting the conclusion that Lower Black Mountain Road is more economic and productive than Upper Black Mountain Road.  Mr. Meuller runs livestock on several sections of land in the area and testified that for livestock, use of Lower Black Mountain Road is "the only option we have."  Restrictions imposed by the weather would not allow access early enough in the spring if he had to come in from the top.  He testified that he begins mending fence in May and it can be the middle of July before he can get in using Upper Black Mountain Road.  Likewise, early fall snow can cut off access from the top before it's time to take cattle off the land.  Mr. Cannady agreed with Mr. Meuller that if he had only one option, he would pick Lower Black Mountain Road.

[¶31]  Based upon our review of all of the evidence, we cannot agree that the choice of Lower Black Mountain Road is illogical, uneconomic, and unproductive.  Substantial evidence, "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency," supports the opposite conclusion. *McTiernan*, 2001 WY 87, ¶ 11, 31 P.3d at 754.  That is, although the Lower Black Mountain Road "is difficult to travel," given the alternative it is logical, economic, and productive.

### 2. Whaleys' contention that *Mayland v. Flitner* compels the conclusion that Lower Black Mountain Road is not the most reasonable and convenient route

[¶32] We now turn to the Whaleys' suggestion that the Board, the district court, and this Court should rely upon *Mayland v. Flitner*, 2001 WY 69, 28 P.3d 838 (Wyo. 2001), and its discussion of Black Mountain Road to conclude that Lower Black Mountain Road is not the most reasonable and convenient route. That case concerned a private road application brought by David Flitner (not a party to this action) for a road that crossed Mayland's property and connected with Snowshoe Pass, a public road. Mayland claimed that Flitner's application was brought in bad faith because he directed an employee to drive "equipment off the mountain via Black Mountain Road and, in that process, to obstruct the road and make it impassable," and he failed to evaluate Black Mountain Road as an alternative route. Mayland also argued that the proposed road was not "necessary" because Flitner had access via Black Mountain Road. *Id*. at ¶¶ 17, 20, 28 P.3d at 845, 846. In the course of examining these issues, we addressed evidence concerning the lower portion of Black Mountain Road.

[¶33] A great deal of our discussion pertained to the private nature of Black Mountain Road, because that impacted whether Flitner already had legally enforceable access to his land, making a private road unnecessary. *Id*. at ¶¶ 23-28, 28 P.3d at 847-48. We did, however, comment on the evidence regarding the condition of the road. *Id*. at ¶¶ 21, 28, 28 P.3d at 846, 848. Flitner "believed that road was in unsatisfactory condition to provide consistent and practical access to his property." *Id*. at ¶ 21, 28 P.3d at 846. We concluded that "[s]ubstantial evidence elicited during the hearings established Black Mountain Road was not a consistently viable route of access to Mr. Flitner's property. It was in poor condition and, as reflected in the BLM letter, had not been consistently maintained." *Id*. at ¶ 28, 28 P.3d at 848.

[¶34] *Mayland* concerned an application for an entirely different private road in 1995, sixteen years before the application was brought in this case. The factors examined by the *Mayland* board and this Court on review were different because in *Mayland* the primary question was necessity, not a choice between two alternate routes. Moreover, *Mayland* considered access on a different proposed route, the Mayland/Snowshoe Pass route. *Id*. at ¶ 28, 28 P.3d at 848. In this case, the question of necessity is not at issue and the Mayland/Snowshoe Pass route has not been proposed as an option. *Mayland* does not persuade us that under the facts of this case the Board's decision that Lower Black Mountain Road is the most reasonable and convenient route was unsupported by substantial evidence.

13

3. **Whaleys' contention that the Board's conclusion that Lower Black Mountain Road is the most reasonable and convenient route is not supported by substantial evidence**

[¶35] We look to the record in this case to determine whether the Board's conclusion was supported by substantial evidence. *In re Crago*, 2007 WY 158, ¶ 11, 168 P.3d at 850. The evidence presented to the Board supporting the Whaleys' request for access via Upper Black Mountain Road included testimony from Mary Whaley, Mike Whaley, Patrick Whaley, and Loren Good. Testimony from Tim Flitner, Mr. Meuller and Mr. Cannady supported access via Lower Black Mountain Road.

[¶36] Mary Whaley testified that while they have run their cattle up and down Lower Black Mountain Road using four-wheel-drive trucks, four-wheelers, horses, and on foot, they have used Lower Black Mountain Road to access their property 5 percent of the time and Upper Black Mountain Road 95 percent of the time. Mrs. Whaley and Mike Whaley, her son, explained that they cannot safely get panel wagons or horse trailers needed to run their cattle operation up or down the Lower Black Mountain Road. Mrs. Whaley stated that Lower Black Mountain Road "has deteriorated over the last few years" and to travel it you need a four-wheel drive pickup, although most people use ATVs. Loren Good agreed, describing the road from the bottom as "hardly a trail" and as providing good access "[i]f you're on horseback or four-wheeler." Mrs. Whaley explained that Upper Black Mountain Road is "not a highway, but it's a much better road." It does not have big drop-offs or big bumps. Mike Whaley testified that he has never seen anyone pull a horse trailer up Lower Black Mountain Road, and that if they did, it would tear up the trailer. Patrick Whaley, Mary Whaley's husband, and Mr. Good both testified that they would not take a trailer up Lower Black Mountain Road.

[¶37] In contrast, Tim Flitner testified that Lower Black Mountain Road is a better option than the upper portion of the road. He has traveled the road "[h]undreds, possibly thousands" of times. He described pulling flatbed trailers loaded with water and fencing equipment up Lower Black Mountain Road. Mr. Flitner also testified regarding the historic use of the road, explaining that the Whaleys "always drove their cattle and initiated any sort of work from the bottom." Mr. Flitner also explained that the Forest Service periodically closes Forest Service Road 17, the entry point for Upper Black Mountain Road. In 2011, Upper Black Mountain Road opened in late June or July, its condition was "marginal" until after the first week of July, and then it became impassable in early October. He also testified that the muddy nature of Upper Black Mountain Road makes it impassable and susceptible to the formation of ruts and scars.

[¶38] Mr. Meuller testified that he has pulled sheep wagons and a stock trailer over Lower Black Mountain Road. Mr. Cannady testified that he has used Black Mountain Road "[p]robably [a] couple hundred" times and has hauled sheep wagons, pickup trucks, and a two-horse trailer up Lower Black Mountain Road. Mr. Cannady also explained that

when the road is wet, Lower Black Mountain is preferable because it does not have as much mud as the top portion of the road.

[¶39]   In *Reidy v. Stratton Sheep Co.*, 2006 WY 69, 135 P.3d 598 (Wyo. 2006), we considered a similar fact situation. *Reidy* concerned whether a private road was necessary, not whether the board's conclusion was supported by substantial evidence, the issue here. Nevertheless, *Reidy* is instructive. There, the party applying for a private road had access via a less desirable Forest Service road that connected directly to his property. He claimed that a private road over a neighboring landowner's property was necessary because he could not haul a semi-truck over the Forest Service road. We held that he had not established necessity, even though the Forest Service road was arguably inaccessible by semi and was narrow and had sharp curves. We noted that "[d]espite a difference of opinion concerning the suitability of the proposed private road for semi-truck traffic, . . . Stratton can use a pickup and trailer to haul its cattle to [its property] via" the Forest Service road. *Id*. at ¶ 36, 135 P.3d at 611.

> Simply because one landowner would prefer to use his or her property in a certain manner and a different access would facilitate that preference does not mean a private road is necessary. Stratton did not establish it was substantially inconvenienced . . . by being required to use the Forest Service road instead of the private road.

*Id.*

[¶40]   Wyo. Stat. Ann. § 24-9-103(a) (2011) requires the Board to "select the most reasonable and convenient route for the access . . . ." In its consideration of which of the two routes was the most reasonable and convenient, the Board was required to "determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented . . . ." *In re Vandre*, 2015 WY 52, ¶ 19, 346 P.3d 946, 952 (Wyo. 2015). We recognize that this was a close call and that it would have been entirely possible for the Board to conclude that Upper Black Mountain Road was the most reasonable and convenient route. However,

> the possibility of drawing two inconsistent conclusions from the entire record does not mean that the conclusion drawn by the administrative agency is not supported by substantial evidence. Even where this court, after reviewing the record, arrives at a different conclusion, the court cannot substitute its judgment for that of the agency's as long as the agency's conclusion is supported by substantial evidence.

*McTiernan*, 2001 WY 87, ¶ 11, 31 P.3d at 754-55.

[¶41]  The Board considered the condition of the roads, the length of time the roads are open, the use of the property through which the roads pass, and which road would cause the least damage to property over which it passes in determining which road is the most reasonable and convenient.  The Board recognized that Lower Black Mountain Road is difficult to travel, but concluded that a more reasonable and convenient option allows access for a greater part of the year.  The Board also placed great emphasis on the fact that Lower Black Mountain Road has been used by the Whaleys and other property owners to access their property.  In the end, the Board concluded that Lower Black Mountain Road was the most reasonable and convenient route.  After our review of the record, we find that this conclusion was supported by substantial evidence.

## CONCLUSION

[¶42]  The viewers and appraisers were authorized to consider Lower Black Mountain Road as an alternate route even though it was located on land owned by Eleven Bar One, which was not originally notified by the applicants. The Board's conclusion that Lower Black Mountain Road was more reasonable and convenient than Upper Black Mountain Road was supported by substantial evidence.

16